RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name:  09a0403p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

                                                                No. 07-3449

           *v.*

CURTIS A. SIMMONS,
                              *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00051—George C. Smith, District Judge.

Argued:  December 3, 2008

Decided and Filed:  November 23, 2009

Before:  BOGGS and CLAY, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Steven S. Nolder, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant.  Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.  **ON BRIEF:**  Steven S. Nolder, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant.  Kevin Winters Kelley, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

        BOGGS, J., delivered the opinion of the court, in which BERTELSMAN, D. J., joined.  CLAY, J. (pp. 25-76), delivered a separate dissenting opinion.

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

---

**OPINION**

---

BOGGS, Circuit Judge.  On three separate occasions within an 18-month period, Simmons was arrested in possession of both crack cocaine and a firearm.  He pled guilty to one count of possession of more than five grams of crack cocaine with intent to distribute and one count of being a previously convicted felon in possession of a firearm. The district court sentenced Simmons to 116 months of imprisonment and three years of supervised release, which is within the range supplied by the advisory Sentencing Guidelines.  In this appeal, Simmons contends his sentence was procedurally and substantively unreasonable.  While we hold that the district court's sentencing was adequate, the Guidelines have since been revised to lower the range for certain crack offenses and Simmons may be eligible for a sentencing reduction.  Therefore we affirm and remand.

I

A federal grand jury indicted Simmons on six separate counts of firearms and narcotics offenses arising out of three separate arrests.  The first arrest occurred on December 30, 2004.  When officers approached his vehicle pursuant to a traffic stop, Simmons left the car, dropping a loaded handgun  as he fled on foot.  After arresting him, the police uncovered 3.5 grams of crack in his car.  The next arrest took place roughly a year later.  On February 19, 2006, police found Simmons unconscious behind the wheel of a car at an intersection.  He did not have his driver's license, and he had 5.3 grams of crack in his possession.  An inventory search of his car turned up yet another loaded handgun.  Simmons was prohibited from possessing a firearm because he had previously been convicted of a felony.

On February 23, 2006, a federal grand jury returned an indictment charging Simmons with two counts of being a previously convicted felon in possession of a firearm, one count of possession of crack cocaine with the intent to distribute, and one

count of possession of more than five grams of crack cocaine with intent to distribute. *See* 18 U.S.C. § 922(g)(1); 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). An arrest warrant was issued, but Simmons was not ultimately detained until May 12, 2006, in the course of still another traffic stop. On this occasion, officers found 2.9 grams of crack cocaine in his possession and retrieved a loaded 9-mm firearm from the backseat of his car. At this point, Simmons was arrested and taken into custody pursuant to the February indictment. On June 29, 2006, a federal grand jury returned a superseding indictment charging Simmons with two additional offenses in connection with his latest arrest. In total, Simmons was charged with three counts of being a convicted felon in possession of a firearm, two counts of possession with intent to distribute crack cocaine, and a single count of possession with intent to distribute more than five grams of crack cocaine.

Pursuant to a plea agreement, Simmons pled guilty to one count of being a previously convicted felon in possession of a firearm (Count 3) and one count of possession with intent to distribute over five grams of crack cocaine (Count 4). He entered this plea with full knowledge of the potential penalties. For Count 3, the statute provided for a maximum sentence of ten years of imprisonment, a fine of up to $250,000, and a three-year term of supervised release. For Count 4, the statute provided for a minimum sentence of five years of imprisonment, a maximum sentence of forty years, a maximum term of five years of supervised release, and a fine up to $2 million. At his change of plea hearing, Simmons indicated that he understood this sentence would be determined by the court, using both the Sentencing Guidelines and the factors enumerated in 18 U.S.C. § 3553(a).

Simmons's plea agreement expressly stated that his conduct would be considered under § 2D1.1 and § 1B1.3 of the Sentencing Guidelines. The parties also agreed to a sentencing enhancement under § 2K2.1(b)(5), which applies if a firearm was used in connection with another felony offense. The Assistant United States Attorney in turn agreed to recommend that Simmons had timely accepted responsibility for the offense. The Presentence Investigation Report found that Simmons had in his possession a total of 11.7 grams when the crack from all three drug counts was added together, which led

to a base offense level of 26 for the offense in Count 4. With a two-level enhancement for the firearm and a three-level reduction for accepting responsibility, the adjusted offense level was 25. Finally, the probation officer found Simmons had 15 criminal history points, making him a Category VI offender. The advisory sentencing range was thus 110 to 137 months.

Prior to the sentencing hearing, Simmons filed a sentencing memorandum, arguing that he was entitled to a downward variance on the basis of § 3553(a). This memorandum argued that a downward variance was warranted because of the Guidelines' disparate treatment of similar quantities of crack and powder cocaine. The government chose not to file a response, and the sentencing hearing took place on March 7, 2007. At this time, the defense again argued that the disparity in penalties for crack and powder cocaine offenses made the Guidelines range excessive and entitled the defendant to a lower sentence.

The Probation Officer recommended a sentence of 110 months, and the sentencing judge ultimately sentenced Simmons to 116 months of imprisonment and three years of supervised release. This sentence was in the lower half of the Guidelines range and, in computing the sentence, the judge referenced several of the relevant § 3553(a) factors and discussed some of the individual circumstances of the crime. In explaining the sentence, the judge did not address the Guidelines' disparate treatment of crack and powder-cocaine offenses. At the conclusion of the proceedings, the court asked the parties whether they had any additional objections in accordance with *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004). Defense counsel indicated that she objected to the sentence "on both procedural and substantive grounds." The defendant now appeals the district court's sentence, contending that it was procedurally and substantively unreasonable.

II

Before we can determine whether the defendant's sentence was procedurally or substantively objectionable, we must first determine what standard of review to apply to these claims. As a general proposition, the Federal Rules of Criminal Procedure distinguish between cases in which a party objects to a court's decision and those in which a party neglects to make an objection, despite an opportunity to do so. Fed. R. Crim. P. 51(b). This court reviews the former category of cases under a reasonableness standard and the latter category under a plain-error standard. *Ibid.* The application of this rule poses many difficulties in the context of sentencing proceedings because of the inherent difficulty of determining when a party has had "a meaningful opportunity to object." *Bostic*, 317 F.3d at 873 n.6.

In *Bostic*, we sought to clarify matters by suggesting that, after pronouncing the defendant's sentence, the district court "ask the parties whether they have any objections to the sentence . . . that have not previously been raised." *Id.* at 872. This approach not only ensures that parties may object to the court's reasoning or failure to address a particular argument, it also affords the district court an opportunity to correct errors right away and facilitates appellate review by identifying "precisely which objections have been preserved." *Id.* at 873. Indeed, it seems especially pertinent with respect to objections that concern the adequacy of the court's explanation precisely because such objections cannot be made until after the court states its reasoning in the course of sentencing the defendant.

In *United States v. Vonner*, this court determined the standard of review to apply when "a sentencing judge asks this question and . . . the relevant party does not object." 516 F.3d 382, 385 (6th Cir. 2008) (en banc). After pronouncing the defendant's sentence in that case, the district court asked both parties whether they "ha[d] any objection to the sentence just pronounced." *Id.* at 384. Vonner's counsel replied, "No, Your Honor." *Ibid.* On appeal, the defendant claimed for the first time that his sentence was procedurally inadequate because the district court's pronouncement of the sentence did not address specifically defendant's arguments for a downward variance. *Vonner*

held that the more exacting "plain error" standard of review, not reasonableness, should apply to this objection.  "No doubt, we could encourage district courts to ask the *Bostic* question without imposing any consequences on a party's failure to answer it.  But that would undermine its effectiveness." *Id.* at 391.  *Vonner* emphasized that substantive and procedural claims made by counsel prior to sentencing are reviewed for reasonableness, regardless of how counsel subsequently answers the *Bostic* question.  *Id.* at 386 (holding defense counsel's answer to the *Bostic* question "did not undermine Vonner's right to appeal issues that he had 'previously raised'").  After all, "[t]he point of the question is not to require counsel to repeat objections or, worse, to undo previously raised objections." *Id.* at 390.  Imposing a more exacting standard of review to any claim that has not been previously raised, however, encourages parties to give the district court *one opportunity* to address these arguments.

The case at bar involves a slight variation on the facts presented in *Vonner*, but requires only the application, not extension, of the underlying rule set forth in that case.[1] Simmons's trial counsel devoted much of her argument to the idea that a downward variance was warranted under 18 U.S.C. § 3553(a)(6), because of the Guidelines' disparate treatment of crack and powder cocaine offenses.  The district court failed to

---

[1]The dissent contends faithful application of our precedent does not compel our holding in this case.  Slip op. at 35–36.  But *Vonner* involved a very similar question to the one now before us: what standard of review should be applied to a procedural objection that is not made when the party articulated the underlying substantive argument on which it is based?  Moreover, both the case at bar and *Vonner* involved a challenge to the procedural adequacy of the district court's explanation.

The dissent's position is built almost exclusively on disagreement with our en banc decision in *Vonner* and recent cases of marginal relevance filed during the last seven months while this case was under submission.  The lone exception, *United States v. Blackie*, 548 F.3d 395 (6th Cir. 2008), is not relevant in the way suggested by the dissent, which contends Blackie's appeal re: family ties was presented to us as a procedural objection based on the district court's purported failure to address a substantive argument.  Slip op. at 26–27, 41–42.

In fact, the Sentencing Transcript and our decision leave no doubt that the district court dealt with Blackie's substantive argument and that his appeal concerned whether the district court "properly considered" his family circumstances, not whether the district court failed to address this argument.  *Id.* at 399 ("Blackie argues that the district court did not properly consider his family circumstances before sentencing him.  Reviewing for reasonableness, we find that this claim is without merit.").

*United States v. Herrera-Zuniga*, 571 F.3d 568 (6th Cir. 2009), is not on point because of the very unique facts of that case: the defendant's counsel breached attorney-client privilege and submitted a letter to the court, addressed to the defendant, indicating counsel believed the defendant posed a serious threat to society.  *Id.* at 575.  The government used this letter in urging the court to depart upward.  *Id.* at 576. Although defense counsel urged the court to stay within the Guidelines, we believe defense counsel's conduct raises very serious questions about the integrity of the sentencing proceedings and whether defense counsel was acting in his client's interest, which dwarf our concerns about ensuring the parties give the district court an opportunity to correct errors and develop the record for appeal.

address this argument explicitly in sentencing the defendant.  Unlike in *Vonner*, however, Simmons's counsel answered the *Bostic* question in the affirmative, proclaiming, "Your Honor, I object just for the record for the procedural, substantive aspects."  In this appeal, Simmons repeats his claim that a within-the-Guidelines sentence for possession of crack is substantively objectionable.  For the first time, the defendant *also* contends that the district court failed to address this substantive argument in pronouncing a within-the-Guidelines sentence and that the sentencing judge's failure to state affirmatively that he agrees with the policies underlying the disparate treatment of crack and powder cocaine, or that he does not believe a categorical departure is warranted in this case, renders the proceeding procedurally inadequate.

In ascertaining the standard of review, we must distinguish between Simmons's substantive and procedural objections.  Defense counsel's answer to the *Bostic* question is immaterial to the standard of review we apply in evaluating Simmons's substantive argument for a below-the-Guidelines sentence under the § 3553(a) factors.  Afer all, defense counsel clearly argued before the sentencing court that the disparate treatment of crack and powder cocaine requires a downward variance, and it is unnecessary for a party to repeat previously made objections in order to secure the lower standard of review on appeal.

The defendant makes a total of three procedural claims on appeal: (1) the district court failed to address defendant's argument for a downward variance based on the disparate treatment of crack and powder cocaine; (2) the district court's analysis of § 3553(a)(2) was inadequate, because the judge failed to consider whether drug treatment would be available to the defendant even if he were given a lower sentence; and (3) the district court improperly treated the Guidelines as mandatory.  Br. of Appellant 13-23.  The last two arguments were not raised before the district court on any reading of the record, and therefore they are subject to plain error review.  *See Vonner*, 516 F.3d at 385.  Determining what standard of review applies to Simmons's other procedural claim poses a more complex inquiry.

Responding to the *Bostic* question, defense counsel objected to the "procedural
. . . aspect[]" of the sentence just pronounced by the district court but did not allege that
the sentencing judge failed to address her policy argument or specifically object to this
purported failure.[2] We must determine whether defense counsel's vague response to the
*Bostic* question is sufficient to secure a lower standard of review for the defendant's
procedural objection, or whether a party's answer must be specific enough to afford the
district court an opportunity to address the particular claim.

To resolve this issue, we must reference the rationale for asking the *Bostic*
question and for applying a higher standard of review to those objections that are not as
a preliminary matter presented to the district court. The first goal is to help the court of
appeals ascertain whether a party had an opportunity to make additional objections.
*Bostic*, 317 F.3d at 872-73. This end is served by asking the question, no matter what
the party answers. Because the record in this case makes apparent the question was
asked and, accordingly, that both parties had an opportunity to make further objections,
there is no need to impose a higher standard of review under these circumstances to
vindicate this objective.

The second justification for the *Bostic* question is to ensure the district court has
an opportunity to correct any error "on the spot," *id.* at 873, and it would be sacrificed
if a higher standard of review were not applied in cases like this one.[3] Providing

---

[2]According to the dissent, bifurcating procedural objections from their related substantive
arguments is to make "a distinction without a difference." Slip op. at 59. The dissent's own recognition
that the question of which arguments a district court must address is legally and "technically
speaking . . . distinct" from which arguments the law compels it to adopt belies the notion that procedure
and substance are inextricably interwoven. Slip op. at 58. In certain cases, a district court may have a duty
to address arguments that it has discretion to reject and, in others, it has no such obligation.

[3]Indeed, this is why *United States v. Grams*, 566 F.3d 683 (6th Cir. 2009) (per curiam) is
distinguishable. In that case, the government informed the district court that the sentence it imposed was
procedurally in error. *Id.* at 685. The district court then acknowledged the mistake, but declined to correct
it, remarking that it believed the error was "negligible." *Ibid.* We held that even though the government,
not the defendant, presented the objection to the district court, we could review the same argument
presented by the defendant on appeal for reasonableness. *Id.* at 686 n.1.
        The district court in *Grams* had an opportunity to correct the error (and chose not to) and the court
of appeals had the benefit of the district court's explanation in reviewing the defendant's claim. *Ibid.*
(stressing that both "considerations were satisfied"). Neither of these considerations was vindicated here,
where the district court had no opportunity to address Simmons's objection and we do not have the benefit
of a detailed record to review.

disincentives for parties who do not give the district court an opportunity to resolve objections helps conserve judicial resources by deterring unnecessary delay and the need to appeal. In this case, defense counsel's response to the *Bostic* question may have been in the affirmative, but it was not specific enough to give the district court an opportunity to correct the alleged error. Indeed, the defense never questioned the adequacy of the court's explanation or the court's failure to address Simmons's argument about the disparate treatment of crack and powder cocaine, at best leaving the sentencing judge to guess what additional objections defense counsel sought to preserve.[4]

If a party need only say that he has further objections and wishes to preserve them, omitting any explanation as to what they are, the *Bostic* question would be a meaningless formality whereby certain magic words are uttered and any new claim may be raised on appeal without consequence. In fact, this formal interpretation would likely deprive district courts of an opportunity to correct errors by penalizing a party's specificity: vague responses would guarantee that any new objection made on appeal will be subject to a less deferential standard of review and specific responses would result in the forfeiture of all other objections that were not explicitly made. In the alternative, it would transform the *Bostic* question from a single question into an

---

[4] Defense counsel clearly could have made a more specific procedural objection without having to repeat the underlying substantive objection about the Guidelines' disparate treatment of crack and powder cocaine. Even if we agreed that there is no difference between *making* a substantive argument and *identifying* a substantive argument in connection with a procedural objection, this would not justify the application of reasonableness, rather than plain-error, review in this case. After all, Simmons's defense counsel easily could have informed the district court of a claim that it had failed to address any of her substantive arguments without identifying the specific claim now before us. Instead, she said, "Your Honor, I object just for the record for the procedural . . . aspects."

Contrary to the dissent, attributing to counsel only the objections she actually made does not mean we are adopting an "inflexible rule" that disregards "earlier stages of the sentencing proceeding." *See* slip op. at 40, 49. We are not saying that the context in which a party answers the *Bostic* question must never be considered. Prior arguments *may* illuminate the content of an objection that is made at a later point in the proceedings. They cannot, however, excuse a party's failure to make a new and different objection.

In this case, the problem is not the context, but defense counsel's response. Although she used the words "object" and "procedural," the statement was so nebulous that to construe it as signaling, "Your Honor failed to address my argument about the 100:1 ratio," would require not just reading between the lines, but writing on a blank page. Any other conclusion would directly contradict *Vonner*, which explicitly anticipated this scenario and rejected the notion that advocating for a downward variance on the basis of policy and answering yes to the Bostic question would alone preserve all procedural and substantive grounds. *Vonner*, 516 F.3d at 391 ("Nor is it the case that a request for a variance in the district court by itself preserves *all* procedural and substantive challenges to a sentence.") (emphasis in the original).

interrogation, whereby the district court is obligated to badger parties into making their case or guess their objections whenever they answer in evasive, but affirmative, terms.

The third and final goal for asking the *Bostic* question is to create "a more reliable record" for appeal. *Id.* at 873. Requiring a party to detail an objection not previously made can facilitate the appellate process, and this case illustrates how. As discussed below, it is unnecessary for a sentencing judge to respond to frivolous or purely legal arguments. If Simmons's defense counsel had made a more specific objection, the judge might have defended his decision and we, in turn, would have the benefit of his explanation in assessing the adequacy of the proceedings. The sentencing judge might have said, as we conclude is the case, that the court had already addressed the argument in a satisfactory manner. Or the judge could have chosen to obviate the issue entirely by expounding his reasons at some length. The *Bostic* question was intended to reduce the need for context-based inquiry by the courts of appeals into sentencing decisions,[5] and the application of a higher standard of review in cases like this one will discourage parties from making vague objections that deprive this court of a more complete record to review.

We hold that *Vonner* requires the application of plain-error review to procedural claims like this one, where a party answers the *Bostic* question in the affirmative, but at such a high degree of generality that the district court has no opportunity to correct its purported error and the court of appeals has been deprived of a more detailed record to review.

---

[5]The dissent supports a "context-based approach" that asks not just whether a party made an objection, but whether a party intended to make a related and distinct objection without actually making it. Slip op. at 45. The dissent further contends that "our sister circuits overwhelmingly have recognized that 'a general objection may suffice to preserve an issue for appeal' where the party already has raised the specific substantive grounds for the objection at earlier stages of the sentencing proceeding . . . ." Slip op. at 49 (citations omitted). The dissent fails to note, however, that these sister circuits must engage in a "context-based" inquiry precisely because they lack the clarity and certainty that the required *Bostic* question brings to sentencing proceedings in our circuit. A holistic review of the record is a more important part of the appellate process where no formal rule of procedure guarantees parties the opportunity to object to all aspects of the proceedings. *Bostic*, 371 F.3d at 872 n.6 (invoking the court's supervisory powers "[d]ue to the difficulty of parsing a transcript" of "less formal" sentencing hearings).

III

Sentencing determinations have both procedural and substantive components. *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007). Simmons objects to his sentence on both grounds. His procedural objection about the district court's failure to address the disparate treatment of crack and powder cocaine is reviewed for plain error,[6] and the underlying substantive argument on which it is based is reviewed for reasonableness under an abuse of discretion standard. We proceed to consider each in turn.

**A. Procedural Adequacy**

A sentence is procedurally inadequate only if the "district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 110 (2006). The district court is not required to refer explicitly to each of the statutory sentencing factors when imposing a sentence. *United States v. Morris*, 448 F.3d 929, 932 (6th Cir. 2006). However, the district judge must "make an individualized assessment based on the facts presented," and must discuss all relevant statutory factors to facilitate "reasonable appellate review." *Gall v. United States*, 128 S. Ct. 586, 596-97 (2007); *Morris*, 448 F.3d at 932.

In this case, there is no question that the district judge considered the Guidelines range, that he understood the Guidelines were advisory,[7] and that he considered several

---

[6]For the sake of clarity, we stress that the defendant's failure to present an objection to the sentencing court is "forfeited" only in the sense that the claim is subject to a more deferential standard of review on appeal. *Bostic*, 371 F.3d at 872-73 ("If a party does not *clearly articulate* any objection and the grounds upon which the objection is based, when given this final opportunity speak, then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal.") (emphasis added).

[7]In his brief, the defendant suggests otherwise because the district court said that the within-the-Guidelines sentence being imposed was reasonable. Br. of Appellant 22-23. Although a sentencing judge may not presume a sentence within-the-Guidelines range is reasonable, *Nelson v. United States*, 129 S. Ct. 890 (2009), a sentencing judge's use of the word reasonable to describe the sentence he is imposing does not necessarily "eclipse" the valid application of § 3553(a). *United States v. Cruz*, 461 F.3d 752, 755-56 (6th Cir. 2006) (holding that a district court did not commit reversible error or improperly apply the § 3553(a) factors despite using the word "reasonable" three times in describing the sentencing process);

of the § 3553(a) factors in imposing the sentence. Contrary to the defendant's allegation that the trial judge's entire analysis is "perfunctory" and little more than "ritualistic incantation," Br. of Appellant 13, the court did in fact consider some of the individual circumstances of this case, referencing the defendant's specific crimes, the defendant's "extensive criminal history," and the defendant's "history of substance abuse [and his] need for substance abuse treatment." The record strongly suggests that the sentencing judge believed these facts were the most critical elements of his decision and justified sentencing the defendant within the advisory Guidelines range.

The sentencing judge's analysis of § 3553(a) factors is two-and-a-half pages, which is terse, but certainly not per se inadequate. At times, the trial judge uses generic language to describe the defendant's crimes. He states the precise details of the drug and gun offenses and without elaboration characterizes the "nature and circumstances" of the offenses as "serious." In light of the judge's brevity, such analysis is short of ideal in assuring this court that the trial judge in fact did his full duty. On its own, however, it surely does not overcome the deference we must accord lower courts in sentencing criminal defendants. *Vonner*, 516 F.3d at 392 ("[D]istrict courts have considerable discretion in this area . . . ."). The defendant makes three additional arguments in support of remand: (1) the district court's analysis of § 3553(a)(2); (2) the district court's analysis of § 3553(a)(6); and (3) the district court's failure to acknowledge expressly its power to vary from the Guidelines based on policy disagreements.

1.      The District Court's Analysis of § 3553(a)(2)

The defendant contends that the district court failed to address his "cogent explanation as to why a sentence below the advisory Guidelines range satisfied Congress' mandate in sentencing." Br. of Appellant 21. Under § 3553(a)(2), a court

---

*United States v. Davis*, 458 F.3d 505, 510 (6th Cir. 2006) (holding that a sentence was procedurally reasonable "despite the district court's repeated enunciation [six occasions] of 'reasonableness,' [because] it nonetheless appears that the district court was concerned with imposing a sentence that was sufficient but no greater than necessary to comply with § 3553(a)."). As here, where the district court applied all the relevant § 3553(a) factors, repeatedly characterized the Guidelines as advisory, and only once described the sentence being imposed as "reasonable," there is absolutely no legal support for concluding that the district court committed plain error.

must consider whether the sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, deters similar criminal conduct, protects the public from the defendant, and provides the defendant with medical treatment or educational training.  In imposing the 116-month sentence, the district court explicitly considered Simmons's "history of substance abuse" and "need for substance abuse treatment," the risk he poses to the public as a repeat offender "in possession of numerous firearms," and the interest in deterring other potential drug offenders. Although the defendant claims the district court unreasonably failed to consider that Simmons is ineligible for a sentencing reduction contingent on his completion of the Federal Bureau of Prisons Drug Treatment Program, Br. of Appellant 21-22, Simmons never presented this argument to the district court, and an adequate explanation requires no such analysis.  Even if correctional treatment of this variety is available to prisoners with shorter sentences, the district court might still conclude that the possibility of recidivism and the need to deter criminal conduct nevertheless make a 116-month sentence "not greater than necessary."  18 U.S.C. § 3553(a).

2.      The District Court's Analysis of § 3553(a)(6)

Defendant's argument concerning the district court's analysis of § 3553(a)(6), which provides that a judge may deviate from the advisory Guidelines range "to avoid unwarranted sentence disparities," is stronger but still ultimately fails.  A sentencing judge must explicitly consider factors that are raised by the defendant or that are otherwise especially relevant to the case at bar.  *United States v. (Kossie Lamon) Simmons*, 501 F.3d 620, 625 (6th Cir. 2007).  Here, the defendant invoked § 3553(a)(6) and the court expressly considered the factor in sentencing him.  The sentencing judge remarked,

> [T]he Court has considered the advisory Sentencing Guidelines and the need to avoid unwarranted sentencing disparities.  The defendant's sentencing range is 110 to 137 months imprisonment.  The Court has considered this advisory range in determining the appropriate sentence, and the sentence is within that range.  Therefore, it is unlikely to result in unwarranted disparities.

The procedural adequacy of Simmons's sentence hinges not on whether the district court discussed § 3553(a)(6), but on the quality of the district court's explanation.

The record squarely indicates, and the government in fact concedes, that defense counsel made a substantive claim regarding the Guidelines' disparate treatment of crack and powder cocaine. Br. of Appellee 16-17 ("[T]he district court did not explicitly distinguish or reject his argument on the potential impact of the 100:1 crack to powder cocaine ratio."). Because no corresponding procedural objection to the district court's failure to directly address this argument was made during sentencing proceedings, the defendant must demonstrate that the district court's omission was plain error to obtain relief. This entails proving the district court made (1) an error, (2) that was obvious or clear, (3) that affected defendant's substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Houston*, 529 F.3d 743, 750 (6th Cir. 2008); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

The first step in our inquiry is to determine whether an adequate explanation of § 3553(a)(6) compelled the court to respond to Simmons's assertion that the disparate treatment of similar quantities of crack and powder cocaine created unwarranted sentencing disparities. Even under the less onerous abuse-of-discretion standard, district courts are entitled to a great deal of deference in explaining a sentence that falls within the Guidelines. "When a district court adequately explains why it imposed a particular sentence, especially one within the advisory Guidelines range, we do not further require that it exhaustively explain the obverse—why an alternative sentence was not selected in every instance." *United States v. Gale*, 468 F.3d 929 (6th Cir. 2006); *see also United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006) ("[W]e will not conclude that a district judge shirked her obligation to consider the § 3553(a) factors simply because she did not . . . address every argument relating to those factors that the defendant advanced."), *cert. denied*, 127 S. Ct. 192 (2006).

The Second Circuit even accords "a strong presumption that the sentencing judge has considered all arguments properly presented to her, unless the record clearly suggests otherwise." *Fernandez*, 443 F.3d at 29. Although we have not adopted this position, the Supreme Court has prescribed a very deferential standard that we have adhered to. Under *United States v. Rita*, 127 S. Ct. 2456 (2007), "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 2468. This explanation can be "brief," *ibid.*, and need only explain the court's reasoning in a manner sufficient to permit meaningful appellate review. *United States v. McGee*, 494 F.3d 551, 556–57 (6th Cir. 2007).

Still, our case law and the Federal Rules of Criminal Procedure indicate that, as a procedural matter, the district judge must generally speak to arguments that are clearly presented and in dispute. *United States v. Gale*, 468 F.3d 929 (6th Cir. 2006) ("When, on appeal, a defendant's argument and supporting evidence presents [sic] an arguably meritorious claim for a lesser sentence, but there is little to suggest that the district court actually considered it, then remand may be appropriate."); Fed. R. Crim. P. 32(i)(3)(B) ("[T]he court must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."). The Supreme Court has likewise held that a district court's thorough explanation "serve[s] a salutary purpose" and "can provide relevant information to both the court of appeals and ultimately to the Sentencing Commission," which will facilitate appellate review and will "help the Guidelines constructively evolve over time, as both Congress and the Commission foresaw." *Rita*, 127 S. Ct. at 2469. Once a defendant disputes a particular issue, the district court becomes obligated to find any facts that are essential to the "clarity of the record." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007) (citations omitted). In *White*, for example, we reversed the sentencing court when it "blindly embraced the figures set forth in Defendant White's PSR-figures" without comment. *Id.* at 416.

There are certain exceptions to this rule.  A district court, for example, is not obligated to review defendant's argument when it lacks any factual basis or legal merit. *See United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006); *Gale*, 468 F.3d at 940 ("[A]rguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence."), *cert. denied*, 127 S. Ct. 3065 (2007).  However, Simmons's argument regarding the disparate treatment of crack and powder cocaine does not fall within this exception, because it is a non-frivolous claim that some courts have accepted. *Kimbrough v. United States*, 128 S. Ct. 558 (2007) (reversing the Fourth Circuit and "[g]iving due respect to the District Court's reasoned appraisal" that the disparate treatment of crack and powder cocaine warranted a downward variance).  The sentencing disparities that result from crack and powder-cocaine convictions have engendered extensive discussion by the Sentencing Commission and, more recently, a modification of the Guidelines.  28 U.S.C. § 994(a), (p).

Another exception to the requirement of explicit discussion applies when the defendant presents issues that are "conceptually straightforward," *Vonner*, 516 F.3d at 388, such that we may assume, even absent express analysis by the judge, that the sentence reflects consideration of the argument. *Ibid.* (holding that the judge evidenced his consideration of an argument for a downward variance simply "by declining to give [the defendant] a lower sentence.").  The government takes this tack in characterizing the district court's judgment as a rejection of an argument without merit that required no further explanation.  "[T]he sentencing court obviously felt the most relevant factors for consideration were Simmons's history and characteristics along with the seriousness of the offense."  Br. of Appellee 19.  And by not varying downward, the judge indicated his belief that crack and powder cocaine do not necessarily warrant the same treatment.

Finally, the rule that a sentencing judge must address every disputed argument that a defendant makes generally has been read as only applying to factual disputes and not legal arguments. *United States v. Cunningham*, 429 F.3d 673, 678 (7th Cir. 2005) ("The rule may be limited to factual disputes. The cases so assume, without so stating outright."); *United States v. Nelson*, 356 F.3d 719, 722-23 (6th Cir. 2004) (vacating

defendant's sentence when the "district court gave no indication as to how it calculated the loss and determined that the government's calculations were correct [and failed to] respond to Nelson's specific objections."). At oral argument, the government emphasized that Simmons's counsel at sentencing merely reiterated standard legal arguments that did not incorporate the personal characteristics of the defendant and specific circumstances of his crime, contending that the district court's failure to grapple in explicit terms with a standard legal argument does not render his sentence procedurally inadequate.[8]

Although Simmons's argument was non-frivolous, defendants convicted for possession of crack have routinely made the same underlying substantive claim, and therefore the sentencing judge was no doubt familiar with this line of reasoning. Moreover, it involved a legal, not factual, matter. Where a party makes a conceptually straightforward legal argument for a lower sentence under one of the § 3553(a) factors, the district court's decision not to address the party's argument expressly is not an error when the court otherwise discussed the specific factor and appears to have considered and implicitly rejected the argument. In this case, there is nothing in the record to suggest the judge did not understand defendant's argument regarding the disparate treatment of crack and powder cocaine, as it was made repeatedly and adamantly by counsel, or recognize his ability to vary on the basis of a categorical disagreement with the crack Guidelines. The judge repeatedly observed that the Guidelines were advisory, concluding with respect to this individual defendant that sentencing disparities were less likely to result from a sentence within the Guidelines range.

The distinction between legal and factual arguments seems especially pertinent in this context, because requiring courts to respond to categorical disagreements explicitly would compel the district court to defend the underlying policies the Guidelines embody. District courts may not assume, as we do on appeal, that a sentence within the Guidelines is presumptively reasonable, *Nelson*, 129 S. Ct. 890; *Rita*, 551

---

[8]The only particularized information proffered by defense counsel in support of a downward variance was to calculate the Guidelines range had Simmons been charged with possession of the same quantity of powder cocaine rather than crack.

U.S. at 351, but we may assume they considered the policies underlying the advisory range if there is no evidence to the contrary. With respect to arguments under § 3553(a)(6), in particular, the Supreme Court has held, "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges," and the district court's very act of correctly calculating and reviewing the advisory range indicates that a district judge "necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." *Gall*, 128 S. Ct. at 599.

Adequately explaining the reasons for sentencing does not require expressly defending the abstract justifications for the sentencing range. Of course, if adhering to the Guidelines were sufficient to eliminate all unwarranted sentencing disparities, then there would be no need for the independent consideration invited by § 3553(a)(6). But the substantive arguments that a district court *must* address involve allegations that, were the Guidelines followed, an unwarranted disparity would result because other judges have departed from the same guideline with respect to similarly situated offenders. *(Kossie Lamon) Simmons*, 501 F.3d at 623-24.

Here, Simmons is objecting to "the district court's mere failure to fully explain the extent of its consideration of sentencing factors," *Houston*, 529 F.3d at 751, which it appears to have fully considered. In short, this claim does not demonstrate Simmons's sentencing was marked by "significant procedural error," *Gall*, 128 S. Ct. at 597, constituting a plain error, such that remand is necessary.

3.     The District Court's Power to Depart Categorically

Simmons's final argument relies on recent Supreme Court cases, decided after his case, and an allegation that the district judge erroneously believed he could not vary from the Guidelines on the basis of policy disagreements as opposed to the personal characteristics of the defendant or the circumstances of the crime. *See Kimbrough*, 128 S. Ct. 558; *Moore v. United States*, 129 S. Ct. 4, 4 (2008) ("[T]he [district] court showed that it did not think it had the discretion later upheld by *Kimbrough*."); *Spears v. United States*, 129 S. Ct. 840 (Jan. 21, 2009) (holding that district courts may vary from the

Guidelines on the basis of categorical policy disagreements with the crack Guidelines). Like Simmons's previous procedural claims, this one is reviewed only for plain error, since it was not made before the district court.

In one of the cases defendant cites, *Moore v. United States*, the Supreme Court indicated that a judge commits error if he said that the court did not have the authority to depart from the Guidelines range on the basis of substantive disagreements with the Guidelines' determinations about the seriousness of the crime. 129 S. Ct. at 4 ("[T]he [district] court showed that it did not think it had the discretion later upheld by *Kimbrough*."). *Moore* vacated a sentence when the district court explicitly held that the disparate treatment of crack and powder cocaine is not a reasonable grounds on which to depart from the Guidelines range. We echoed this conclusion in *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009), holding that when a district court made express statements that "the [c]ourt *must* apply the Guidelines," *id.* at 996 n.1 (emphasis in the original), remand was necessary "to give the district court an opportunity to impose a sentence with full recognition of its authority to reject and vary from the crack-cocaine Guidelines based solely on a policy disagreement with those Guidelines." *Id.* at 991; *see also United States v. Porter*, No. 07-5714, 2009 WL 440269, at *4-5 (6th Cir. Feb. 24, 2009) (observing that "we did not merely assume in *Johnson* that the district court lacked 'full awareness of this authority,' but we instead relied on the district court's express statements at the sentencing hearing" indicating it lacked the power to vary categorically based on policy disagreement).

Simmons alleges that "the [district] court [in sentencing him] . . . essentially treated the 100:1 ratio as a mandatory guideline," making his case indistinguishable from *Moore* and *Johnson*. Br. of Appellant 16. The record, however, belies the defendant's claim. At Simmons's sentencing, the district court observed at five separate points that the Guidelines were advisory. There is simply no indication whatsoever that the judge believed the Guidelines were mandatory, or that the court believed it was not free to vary downward based on both particularized circumstances of the crime and defendant or

based on substantive disagreement with the crack Guidelines.[9]   Indeed, Simmons's sentencing is different from *Moore* and the other cases in this line because the district court never expressly held, or even intimated, that he was not free to depart from the Guidelines on the basis of either a categorical policy disagreement or the personal circumstances of the defendant.  It would be a misreading of the Supreme Court's cases to say that a sentencing judge must explicitly recognize that such variances are permitted when the court has given no indication that it believes they are prohibited and explicitly recognizes the advisory nature of the Guidelines.  Therefore we decline to accept this interpretation, and we instead hold that when a district court observes that the Guidelines are advisory and provides no indication that policy disagreements are not a proper basis to vary, then a sentence within the Guidelines range remains presumptively reasonable on appeal.

Although the defendant contends this circuit "impliedly" held district courts were not allowed to vary based on categorical disagreements, Br. of Appellant 19, we reject the defendant's position that our law in any sense precluded downward variances of this kind or that the district court was therefore unaware of its power to categorically vary.[10]  Where the sentencing record is at worst ambiguous with respect to the district court's awareness of its authority to depart, the question is not whether Simmons suffered prejudice, but whether he can even show an error.[11]

---

[9] Although there are no affirmative statements that categorical departures are permissible in this context, the defendant bears responsibility for this silence in the sentencing record under our adversarial system as interpreted in *Vonner*.  Our case is highly illustrative of the risk of sandbagging where parties are not provided with any incentive to elicit a clarification from the district judge in response to the *Bostic* question.  *United States v. Cope*, 312 F.3d 757, 778-79 (6th Cir. 2002) (recognizing the interest in crafting rules that do not encourage parties to withhold objections, or delay making them, to strengthen their case on appeal).

[10] In support of his position, the defendant cites language from *United States v. Caver*, 470 F.3d 220 (6th Cir. 2006).  However, the language at issue states only that, "while a departure from the 100:1 ratio may well be reasonable in a particular case, applying the ratio does not, *ipso facto*, make a sentence unreasonable under existing law." *Id.* at 249.  This language indicates that courts may reasonably apply the ratio.  It does not indicate that courts lack the power to vary categorically.

[11] In certain instances, plain error can be inferred from the legal regime in which a judge is sentencing the defendant.  Following *Booker*, 543 U.S. 220, for example, any sentence rendered under the mandatory guideline scheme required resentencing unless "the trial record contains clear and specific evidence that the district court would not have . . . sentenced the defendant to a lower sentence under an advisory Guidelines regime." *United States v. Barnett*, 398 F.3d 516, 529 (6th Cir. 2005).
Defendants were not required to show prejudice in light of the fact the district courts were

Therefore we cannot say the district court's explanation constitutes an error, let alone an error that "was obvious or clear," affecting the defendant's substantial rights and calling into doubt "the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006). We are applying, after all, a deferential standard in which sentences are reversed only in "exceptional circumstances . . . where the error is so plain that the trial judge . . . [was] derelict in countenancing it." *Ibid.* Such is not the situation in this case, where the district court explicitly recognized the advisory nature of the Guidelines, considered all the relevant sentencing factors, including the need to avoid unwarranted sentencing disparities. The district court's failure to speak directly to its own power to depart from the Guidelines for policy reasons does not supply a basis for inferring plain error. Nor does it warrant appellate remand.

## B. Substantive Adequacy

A sentence within the Guidelines range is presumptively reasonable. *Rita*, 127 S. Ct. at 2459; *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). Our circuit takes a deferential approach to this type of substantive sentencing challenge. *See Vonner*, 516 F.3d at 392 ("[T]he central lesson [of recent Supreme Court activity is] that district courts . . . deserve the benefit of the doubt when we review their sentences and the reasons given for them."). As the Supreme Court has explained, when a sentencing judge's determination falls within the Guidelines range, "that double determination significantly increases the likelihood that the sentence is a reasonable one." *Rita*, 127 S. Ct. at 2463. There may be occasions when a sentence within the Guidelines range is substantively unreasonable. But we have held this is no small burden and that we will not generally "second guess" sentences on substantive grounds when they fall in the range prescribed by the Guidelines. *United States v. Davis*, 537 F.3d 611, 618 (6th Cir. 2008).

---

unquestionably operating under a mandatory, and thus illegal, sentencing system, and it would have been "exceedingly difficult" for a plaintiff to prove that his sentence would have been different even if the district court had treated the Guidelines as only advisory. *Id.* at 528. There is no reason to extend this rule to the present context where we had not erroneously confined the district court's authority to depart.

Despite Simmons's allegation, there is no evidence that the lower court selected Simmons's sentence arbitrarily, based its determination on impermissible factors, disregarded any relevant concern, or gave unreasonable weight to any of the § 3553(a) factors. Although the district court clearly placed great weight on Simmons's criminal history, the nature and circumstances of the offense, the need to rehabilitate Simmons, and the need to deter other potential drug offenders, the court did not weigh these factors so heavily as to make the sentence substantively unreasonable. The district court also stressed the need to avoid "unwarranted sentencing disparities" in punishing similarly situated people, and found that a sentence within the Guidelines range was likely to serve this end in this case.

For Simmons's sentence to be substantively unreasonable, we would have to hold not that district courts *may vary* from the Guidelines based on the disparate treatment of crack and powder cocaine, but that crack sentences are unreasonable *unless the district judge varies* from the Guidelines. Although the defendant takes for granted that the disparate treatment of crack and powder cocaine is unfair, there are reasons to punish a person in possession of crack cocaine more harshly than a person who possesses a similar quantity of powder cocaine. After all, crack is a more concentrated form of powder cocaine, is more addictive, and is associated with higher levels of crime. U.S. SENTENCING COMMISSION, SPECIAL REPORT TO THE CONGRESS COCAINE AND FEDERAL SENTENCING POLICY (1995), http://www.ussc.gov/CRACK/CHAP6.HTM. For these reasons, we have repeatedly held the disparate treatment of crack and powder cocaine advised by the Guidelines is not per se unreasonable or unconstitutional. *United States v. Caver*, 470 F.3d 220, 249 (6th Cir. 2006) (holding "while a departure from the 100:1 ratio may well be reasonable in a particular case, applying the ratio does not, *ipso facto*, make a sentence unreasonable under existing case law."); *United States v. Blair*, 214 F.3d 690, 702 (6th Cir. 2000) ("The law is well settled in this circuit that the 100:1 ratio withstands constitutional scrutiny.").

IV

Although we affirm the district court's sentence for the reasons set forth above, we nevertheless remand because Simmons is entitled to a "second look" consideration pursuant 18 U.S.C. § 3582(c).  On May 1, 2007, the Sentencing Commission submitted amendments to the federal Sentencing Guidelines to Congress, and they took effect on November 1, 2007.  One of the amendments lowered the Guidelines range for certain crack offenses by certain offenders, providing for a downward adjustment of two levels to each threshold quantity enumerated in § 2D1.1.  (The new Guidelines retain a very substantial differential.)  On March 3, 2008, the amendments to the crack Guidelines were made retroactive, so that thousands of defendants serving certain sentences can file a motion for a sentence reduction.  U.S.S.G. App'x C Supplement, Amendment 706 (Nov. 1, 2007) (regarding two-level reduction); U.S.S.G. App'x C Supplement, Amendment 713 (Mar. 3, 2008) (regarding retroactivity).

We have already issued a decision concerning the retroactive crack cocaine amendments, and the government does not appear to dispute that the revised Guidelines require the resentencing of certain defendants who have been convicted of possession of crack.  *See United States v. Poole*, 538 F.3d 644, 645 (6th Cir. 2008) ("The government agrees that the case should be remanded . . . .").  When applicable, the proper procedure for this court to follow is to affirm the sentence and remand if the amendment would alter the Guidelines range for this particular defendant.  *Id.* at 645; U.S.S.G. § 1B1.10(a)(2)(B) (Resentencing a defendant "is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2) if" the reduction "does not have the effect of lowering the defendant's applicable guideline range . . . .").  If Simmons were resentenced today, he would start out with a base offense level of 24 (more than 5 grams, but less than 20 grams of cocaine base).  He would then get a two-level enhancement for a firearm, and a three-level reduction for accepting responsibility, leaving him with a total offense level of 23.  The Guidelines range for a Category VI offender is 91-115 months.  As a result, the two-level reduction would have the effect

of lowering his guideline range from his current range of 110-137 months, and therefore the Guidelines do not preclude application of § 3582(c).

V

For the foregoing reasons, we AFFIRM Simmons's sentence and REMAND the case for possible consideration under the 2007 Amendments.

------------

**DISSENT**

------------

CLAY, Circuit Judge, dissenting.   On direct appeal, Defendant Curtis A. Simmons ("Simmons") argues that his 116-month sentence, a term within the range recommended under the advisory Sentencing Guidelines, is procedurally and substantively unreasonable.   In challenging the procedural aspects of his sentence, Simmons contends that the district court failed to consider all of the arguments that he raised under 18 U.S.C. § 3553(a) in support of a lower sentence.   Although Simmons raised a number of arguments before the sentencing court, his central argument was that the then-applicable sentencing range recommended under the Guidelines for offenses involving crack cocaine was significantly and unjustifiably harsher than the range recommended for offenses involving powder cocaine.

Simmons first raised this "crack/powder disparity" argument in the sentencing memorandum he filed prior to his sentencing hearing.   The government did not file a response to Simmons' memorandum or otherwise challenge his crack/powder disparity argument at the time.   Simmons reiterated this argument at the sentencing hearing, arguing that the 100-to-1 sentencing ratio prescribed by the Guidelines at that time "results in a huge disparity in sentencing."   J.A. 70.   In presenting this argument, Simmons urged the court to consider that the Guidelines' "100-to-1 ratio is advisory." J.A. 70.   Although Simmons repeatedly raised this crack/powder disparity argument as the basis for a downward variance, and despite the fact that defense counsel asserted this argument mere moments before the court began pronouncing Simmons' sentence, the district court did not address the issue.

After pronouncing Simmons' sentence, the district court asked, as required by our decision in *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004), whether the parties had "any objections to the sentence just pronounced that *have not been previously raised*?"   J.A. 77 (emphasis added). Although defense counsel responded in the

affirmative, she objected "just for the record for the procedural, substantive aspects." J.A. 77.

On appeal, Simmons challenges, *inter alia*, the district court's failure to consider and adequately explain its reasons for rejecting his crack/powder disparity argument. Before evaluating the merits of Simmons' claim, we first must determine what standard of review applies, which in turn requires us to determine whether Simmons preserved this claim for appeal.[1]  According to the majority, whether Simmons forfeited this claim hinges entirely on the adequacy of defense counsel's post-sentencing objection, which, the majority insists, must be considered in isolation.  I strongly disagree.  Not only is the majority's reasoning contrary to our prior published precedent, it also directly conflicts with Supreme Court authority and is in tension with the fundamental principles underlying our decisions in this area.

For whatever reason, the majority has chosen to ignore the fact that this Court has expressly held that a defendant's arguments during sentencing raising a basis for a downward departure are sufficient—standing alone and *without a distinct, post-sentencing objection*—to preserve for appeal a  failure-to-consider procedural claim. *See, e.g.*, *United States v. Blackie*, 548 F.3d 395, 398 (6th Cir. 2008) ("We review for reasonableness [defendant's] claim that the district court failed to consider his family ties and responsibilities at sentencing *because he had raised the issue prior to and during*

---

[1]Confusingly, the majority relies on *Bostic* to "stress" that defense counsel's failure to articulate the specific substantive basis for her objection implicates the standard of review in that "the claim is subject to a more deferential standard of review on appeal." Majority Opinion ("Maj. Op.") at 11 n.6.  For what purpose the majority "stresses" this point is unclear, but, regardless, it rests on a false distinction. In contrast to claims of error that a party properly preserves for appeal pursuant to Federal Rule of Criminal Procedure 51(b), the plain-error standard set forth in Rule 52(b) applies only to those "errors that were *forfeited* because not timely raised in district court."  *United States v. Olano*, 507 U.S. 725, 731 (1993) (emphasis added).  Notwithstanding the majority's suggestion, nothing in this Court's decision in *Bostic* is to the contrary.  In fact, the sentence immediately preceding the line from *Bostic* on which the majority relies makes clear that the rule announced in that case was intended to help this Court determine what claims a party had "forfeited" by failing to raise them below.  371 F.3d at 872 ("If the district court fails to provide the parties with this opportunity, they will not have *forfeited* their objections and thus will not be required to demonstrate plain error on appeal." (emphasis added)).  This Court's subsequent application of *Bostic* confirms that this rule relates to a party's right to raise a claim of procedural error on appeal.  *See, e.g.*, *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (holding that defendant's failure to object at the time of sentencing "undermine[s] his *right to challenge* the adequacy of the court's explanation for the sentence" (emphasis added)).  Not only is the distinction that the majority attempts to draw contrary to our case law, it is especially confusing given that the majority repeatedly states that plain-error review applies in this case because Simmons' general objection was insufficient to "preserve" his procedural claims for appeal.  *See* Maj. Op. at 9.

*the sentencing hearing*, thus preserving it for appeal." (emphasis added)). In other words, regardless of whether Simmons' counsel raised an adequate post-sentencing objection, our decision in *Blackie* indicates that Simmons' arguments "prior to and during the sentencing hearing" were sufficient on their own to preserve his claim that the district court failed to consider his crack/powder disparity argument.

Even if we were to disregard this approach, our case law also suggests that defense counsel's post-sentencing objection, although imprecise, was sufficient to preserve this claim because it expressly brought to the district court's attention Simmons' concern that the court had committed a "procedural" error in pronouncing sentence. While it is true that "[n]o one would call this [objection] ideal," *Vonner*, 516 F.3d at 386, it nevertheless was *sufficient* under our case law to preserve Simmons' procedural claims for appeal. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 581 n.7 (6th Cir. 2009) ("Regardless of whether defense counsel had asserted a more detailed objection at the time of sentencing, the sentencing transcript indicates that the district court was not going to correct this issue 'on the spot,' as the sentencing judge already had stated that he believed that he had the authority to reject the advisory sentencing range on this basis. In this circumstance, it is difficult to imagine any practical reason to require a defendant to raise an objection that is patently futile. *Vonner* does not require such formalism."). At a minimum, defense counsel's objection was sufficient to satisfy the majority's concern that an objection must "signal[]" to the district court that the defendant is asserting a "new and different objection." *See* Maj. Op. at 9 n.4.

According to the majority, Simmons' arguments prior to and during the sentencing hearing raised a *substantive* claim that is distinct—purportedly in some significant way—from his *procedural* claim that the court failed to consider his disparity argument. Based entirely on that technical distinction, the majority concludes that defense counsel "never questioned the adequacy of the court's explanation or the court's failure to address Simmons's argument about the disparate treatment of crack and powder cocaine." Maj. Op. at 9. This argument is unpersuasive. Even if the majority is correct that Simmons' prior substantive arguments are distinct from the procedural

claims he raises on appeal, defense counsel's post-sentencing objection undoubtedly signaled to the sentencing judge that Simmons was raising a new and different "procedural" objection. According to the majority, Simmons' prior arguments could not have preserved his "procedural" claim for appeal because any such claim did not arise until the district court finished pronouncing Simmons' sentence. But if that is true, then defense counsel's post-sentencing "procedural" objection *necessarily* asserted a "new and different objection" because Simmons' procedural claim did not exist until that moment. The only question, therefore, is whether defense counsel's objection was sufficiently specific to preserve this specific procedural claim for appeal.

As to this issue, the majority concludes that defense counsel's objection "was not specific enough to give the district court an opportunity to correct the alleged error . . . [because it left] the sentencing judge to guess what additional objections defense counsel sought to preserve." Maj. Op. at 9. I disagree. In light of Simmons' repeated arguments regarding the crack/powder disparity, and considering that this was Simmons' central argument in favor of a downward departure and that defense counsel had raised this issue mere moments before the district court began sentencing Simmons, it would be unreasonable to expect defense counsel to rehash the issue *for a third time* when she voiced her new "procedural" objection. *See Herrera-Zuniga*, 571 F.3d at 581 n.7 (rejecting the notion that defense counsel is required to assert "a more detailed objection at the time of sentencing" where such an objection would not "help clarify the record or encourage the resolution of the issue"). If the district court was at all confused about what "procedural" claim defense counsel was seeking to preserve for appeal, then he should have asked for clarification.

The majority concludes that defense counsel's objection was too vague only because it has defined the parameters of our inquiry so narrowly that Simmons' prior arguments are rendered entirely irrelevant. In defending the narrow scope of its inquiry, the majority lays out a jumbled confusion of maxims that are contrary to our prior precedent and internally inconsistent. The majority insists that "[w]e must determine whether defense counsel's vague response to the *Bostic* question is sufficient to secure

a lower standard of review for the defendant's procedural objection." Maj. Op. at 8 (emphasis added). The majority defends this narrow focus by arguing that the rule we adopted in *Bostic* somehow obviates the need to conduct a contextual inquiry when considering the adequacy of a party's objection. *See* Maj. Op. at 10 n.5.

As I explain below, our decision in *Bostic* did nothing of the sort. As the majority is well aware, our decision in *Bostic* certainly did not speak to any issues regarding the nature of our inquiry into whether a party's post-sentencing objection is sufficient to preserve a claim for appeal. Nor did our decision in *Bostic* address in any way whether a party's arguments during sentencing are sufficient to do so. In fact, our decision in *Bostic* imposed upon *the sentencing judge*—not the defendant—a new procedural requirement to help this Court determine whether the sentencing judge provided the parties an adequate opportunity to object. 371 F.3d at 872. If anything, then, our decision in *Bostic* implies that it is the sentencing judge's responsibility to make sure that the record is clear, and thus suggests that follow-up inquiry by the court in this case would have been appropriate. Nor did our decision in *Vonner* address either of these issues. In fact, our decision in *Vonner* encouraged "a common-sense application of the plain-error doctrine," and specifically emphasized that we apply that standard "with an eye to the realities of the facts and circumstances of each sentencing proceeding." 516 F.3d at 391. Rather than eliminate the need for a contextual inquiry, *Vonner* thus actually seems to require one. *Id.* at 390 (requiring that we review whether an objection has been "previously raised"). Despite the majority's best efforts, the narrow inquiry it endorses cannot be squared with the "common-sense" approach endorsed by, and indeed required under, our decisions in *Bostic* and *Vonner*. *See, e.g.*, *Herrera-Zuniga*, 571 F.3d at 580-81 (emphasizing the "practical" underpinnings of the *Bostic* procedure and *Vonner*'s forfeiture rule).

In any event, regardless of whatever the majority believes our decisions in *Bostic* and *Vonner* imply with respect to the scope of our inquiry, the Supreme Court has made clear that, in determining whether a party has preserved a claim for appeal, we are obliged to consider the context in which a party raises (or fails to raise) an objection,

including the substance of a party's prior arguments. In *Osborne v. Ohio*, 495 U.S. 103 (1990), for instance, the Court explicitly reviewed the "*sequence of events*" that transpired in the proceedings at issue in that case before concluding that "counsel's failure to object on this point does not prevent us from considering [defendant's] constitutional claim . . . because we are convinced that [defendant's] attorney pressed the issue . . . before the trial court and, *under the circumstances*, nothing would be gained by requiring [defendant's] lawyer to object a second time." *Id.* at 124-25 (emphasis added). The majority's insistence that defense counsel's post-sentencing objection must stand "on its own" is directly contrary to the approach endorsed by the Supreme Court.

For these and the reasons set forth below, I cannot support the scope of the inquiry conducted by the majority, nor its determination that plain-error review applies here.

I also cannot accept the majority's determination that, regardless of what standard of review applies, remand is not required. Our case law makes abundantly clear that a district court commits procedural error by failing to address a defendant's central argument in favor of a below-Guidelines sentence. Ignoring the overwhelming weight of controlling authority, the majority concludes that the district court's failure to address Simmons' central argument in favor of a lower sentence was "not an error" in this case because the court "*appears* to have considered and *implicitly* rejected the argument." Maj. Op. at 17 (emphasis added). The majority is able to reach that conclusion only by accepting the government's unfounded assertion that a sentencing court can rule on a defendant's nonfrivolous claims *by implication* if it finds them to be without merit. *See* Maj. Op. at 17-18. Both the majority's holding and the reasoning underlying it are directly contrary to the overwhelming weight of authority. In literally dozens of reported cases, this circuit has rejected the majority's approach, holding instead that a district court is required not only to *consider* a defendant's claims, but also to *adequately explain* its reasons for rejecting them. *See infra* Part V.C. Even under the deferential

plain-error standard, the district court's utter failure to address Simmons' patently nonfrivolous argument constitutes reversible error.

Even more troubling, however, is just how fundamentally unbalanced and unjust the approach endorsed by the majority is. On the one hand, the majority is willing to speculate as to what the district court "appears" to have "implicitly" considered, while on the other hand faulting defense counsel for not "specifically" identifying the procedural errors to which she was objecting. The majority also insists that the procedural rule confirmed in *Vonner* somehow eliminates the need for a contextual inquiry when determining the sufficiency of a defendant's objection, despite the fact that *Vonner* explicitly requires us to conduct such a contextual review when evaluating the sufficiency of the district court's sentencing pronouncement. *See Vonner*, 516 F.3d at 387 (explaining that a "lengthy explanation" of the sentence chosen may not be required in all cases "because '[c]ircumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence'" (quoting *Rita v. United States*, 551 U.S. 338, 357 (2007)); *see also Rita*, 551 U.S. at 356 ("The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances.")).

In both respects, the majority's decision typifies a troubling imbalance that plagues our case law in this area. It also reveals that the majority's professed concern for clarity in this area is disingenuous. If the majority truly was interested in adopting rules that will lead to a clear record for appeal, then its first order of business obviously should be to hold the district court accountable for failing to address Simmons' primary, repeated, and nonfrivolous argument in favor of downward departure. Instead, the majority bends over backward to *guess* at whether the court considered Simmons' argument. It makes no sense, and is fundamentally unfair, to place the burden for creating an adequate record for appeal on criminal defendants rather than district court judges.

Let me be clear: I acknowledge that we are bound to apply the rule that the en banc majority announced in *Vonner*, but I emphatically reject the assertion that *Vonner*

requires the outcome reached by the majority.  The narrow scope of the majority's inquiry and its insistence on a rigid application of the plain-error standard is contrary to the "common-sense" approach required under *Vonner*, and repeatedly confirmed in subsequent reported decisions.  If the majority is right, however, and *Vonner* requires either the inquiry undertaken or the outcome reached by the majority, then the time has come for this Court to reconsider the wisdom of our decision in *Vonner*.  And if this Court is unwilling to acknowledge its mistake, then perhaps the Supreme Court should intervene to rectify this imbalance.

## I.

On June 29, 2006, a federal grand jury returned a superseding indictment charging Simmons with six counts of various firearms and narcotics offenses.  Specifically, Simmons was charged with three counts of being a previously convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), two counts of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of possession with intent to distribute over five grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).  The charges against Simmons stemmed from three separate incidents, each involving Simmons being arrested while in possession of crack cocaine and a loaded weapon.

On October 11, 2006, Simmons pleaded guilty, pursuant to a plea agreement, to one count of being a felon in possession of a firearm and the count charging him with possession with intent to distribute over five grams of crack cocaine.  Consistent with the plea agreement, the Presentence Investigation Report ("PSR") found that Simmons was responsible for a total of 11.7 grams of crack cocaine, an amount equal to the total weight of all three possession charges listed in the indictment.  The PSR determined that the amount of crack cocaine at issue supported a base offense level of 26.[2]  The PSR also

---

[2]Effective November 1, 2007, United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(c) was amended to reduce by two offense levels the base offense level for most crack cocaine offenses.  *See* U.S.S.G., App. C, amend. 706.  Effective March 3, 2008, Amendment 706 was made retroactive, thus permitting defendants serving eligible sentences to file a motion for a sentence reduction under 18 U.S.C. § 3582(c)(2).  *See* 73 Fed. Reg. 217, 220 (Jan. 2, 2008).

concluded that the felon-in-possession charge supported a two-level enhancement. The PSR thus recommended a total offense level of 28. Simmons' offense level then was reduced by 3 levels based on his timely acceptance of responsibility. The probation officer also determined that Simmons had a total of 15 criminal history points, and thus was a category VI offender. Taken together, these elements supported an advisory sentencing range of 110 to 137 months imprisonment.

Although neither party objected to the PSR's Guidelines calculations, Simmons filed a sentencing memorandum prior to the sentencing hearing urging the district court to impose a sentence below the advisory Guidelines range and outlining several factors pursuant to 18 U.S.C. § 3553(a) that he believed supported such a downward variance. The memorandum raised issue regarding Simmons' personal history, his character, and the nature of his offenses. Primarily, however, Simmons' memorandum focused on the fundamental unfairness of the "100-to-1 sentencing ratio" then applicable under the Guidelines to offenses involving crack cocaine as compared to offenses involving powder cocaine. The government did not file a response to Simmons' memorandum.

At the sentencing hearing, the government urged the court to impose a sentence at the low end of the advisory sentencing range. The court then heard argument from defense counsel and Simmons himself. As with his sentencing memorandum, the primary focus of Simmons' argument in favor of a below-Guidelines sentence was that the crack/powder sentencing disparity was fundamentally unfair and resulted in an advisory sentencing range for crack offenses that was unnecessarily harsh. After hearing from both sides, the district court sentenced Simmons to 116 months imprisonment. In pronouncing Simmons' sentence, the court briefly discussed Simmons' personal history and characteristics, as well as the nature and circumstances of the offenses. The district court never addressed Simmons' arguments regarding the crack/powder disparity.

After pronouncing Simmons' sentence, the court asked the parties whether they had "any objections to the sentence just pronounced that have not been previously raised?" J.A. 77. Defense counsel responded in the affirmative, stating: "Your Honor I object just for the record for the procedural, substantive aspects." J.A. 77.

**II.**

The first question we face is what standard of review applies to Simmons' claim that the district court failed to consider and failed to adequately explain its reasons for rejecting his crack/powder disparity argument.  For its part, the majority concludes that Simmons has forfeited this claim and thus our decision in *Vonner* requires that plain-error review applies.  I respectfully disagree.

**A.**

"Post-*Booker*, we review a district court's sentencing determination, 'under a deferential abuse-of-discretion standard,' for reasonableness."  *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 591 (2007)); *see also Rita*, 551 U.S. at 347-50.  This standard applies "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range."  *United States v. Studebaker,* 578 F.3d 423, 430 (6th Cir. 2009) (quoting *Gall*, 128 S.Ct. at 597).

To determine whether a defendant's sentence is "reasonable," this Court must examine both the procedural and substantive aspects of the sentencing court's decision.  *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006).  Whereas a sentence is substantively unreasonable if the length of the sentence is "greater than necessary" to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a), the district court commits "significant procedural error" by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range," *Gall*, 128 S.Ct. at 597.

Unlike claims relating to the substantive aspects of his or her sentence, a defendant generally must preserve procedural challenges for appeal.  *See Vonner*, 516 F.3d at 385-86.  Any claim not preserved for appeal is subject to review for plain error.  *Id.*; Fed. R. Crim P. 52(b).  This forfeiture rule, however, applies only where the relevant party was given an adequate opportunity to object.  Fed. R. Crim. P. 51(b) ("If a party

does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party.").

In many cases, this Court "wrestled with the difficulty of 'parsing a [sentencing] transcript to determine whether . . . a party had a meaningful opportunity to object' and of determining whether plain-error review should apply." *Vonner*, 516 F.3d at 385 (quoting *Bostic*, 371 F.3d at 873 n.6). Therefore, "[i]n an effort to bring some clarity to the matter and to ensure that plain-error review applied only when the parties fairly were given a chance to object to the sentencing procedure," *Vonner*, 516 F.3d at 385, we adopted a rule requiring district courts, after announcing the defendant's sentence, to "ask the parties whether they have any objections to the sentence . . . that have not previously been raised," *Bostic*, 371 F.3d at 872. Where the sentencing judge asks this question but a party fails to raise any objections "not previously raised," the defendant forfeits all unpreserved claims and plain-error review applies on appeal. *Vonner*, 516 F.3d at 385-86.

In defending this rule, the en banc majority in *Vonner* explicitly encouraged "a common-sense application of the plain-error doctrine," and instructed reviewing courts to consider "the realities of the facts and circumstances of each sentencing proceeding" before concluding that plain-error review was required. *Id.* at 391. Our subsequent decisions have confirmed this flexible approach, explaining that "the *Bostic* procedure and the *Vonner* forfeiture rule were adopted to serve practical ends, [and thus] it would be inappropriate to construe those requirements as formal and inflexible procedural protocols." *Herrera-Zuniga*, 571 F.3d at 580.

**B.**

Despite the obvious and significant differences between the issues we addressed in *Bostic* and *Vonner* and those we confront in this case, the majority insists that resolving Simmons' claims requires "only the application, not extension, of the underlying rule set forth in [*Bostic* and *Vonner*]." Maj. Op. at 6. I respectfully disagree.

Although *Bostic* and *Vonner* provide a general framework for determining what standard of review applies, they do not dispose of the unique questions we face in this case.

There is no dispute that Simmons repeatedly asserted during earlier stages of his sentencing proceedings the substantive argument that he alleges the district court failed to consider. There also is no question that, unlike the facts presented in either *Bostic* or *Vonner*, defense counsel asserted a post-sentencing procedural objection. For that reason, determining the applicable standard of review in this case forces us to confront two related questions that we simply did not address in either *Bostic* or *Vonner*: first, whether Simmons' prior arguments standing alone were sufficient to preserve his right to challenge the procedural aspects of his sentence on appeal; and second, whether defense counsel's objection, taken together with Simmons' prior arguments, was sufficient to preserve his procedural claims. Other than a few comments in *dicta*, our decisions in *Bostic* and *Vonner* provide little to no guidance in resolving either of these questions.

The question before us in *Bostic* was not whether or under what circumstances a general objection is sufficient to preserve an issue for appeal, but rather how we are to determine whether a party was "given an opportunity to argue its opposition either before or after the district court pronounced [the defendant's] sentence." 371 F.3d at 870. The defendant in that case, pursuant to a written plea agreement, pleaded guilty to two firearms charges. Prior to sentencing, the defendant filed a motion for a downward departure. The government "did not file any papers opposing that motion." *Id.* at 870. At the sentencing hearing, the district court questioned the defendant about the issue and then asked, "Now, what does the U.S. Attorney have to say about this?" *Id.* at 870. Counsel responded that the government was aware of the motion but then changed the subject and began discussing an unrelated "evidentiary matter." *Id.* After hearing from both sides on the evidentiary issue, the district court returned to the defendant's motion and granted a downward departure under U.S.S.G. § 5H1.1 based on "the defendant's age, infirmity and poor health." *Id.* at 867. After pronouncing sentence, the district

court adjourned the sentencing hearing without explicitly giving the government an opportunity to object.  *Id.* at 870.

On appeal, the government challenged the reasonableness of the district court's sentence, arguing, *inter alia*, that the district court should not have granted the defendant's motion for a downward departure.  In determining what standard of review applied, we considered whether the government's failure to lodge an objection to the defendant's motion for a downward departure should be "excused" because, according to the government, the sentencing judge failed to provide the government an adequate "opportunity to object" as required under Rule 51(b).  *Id.* at 870-71.

In resolving the matter, we noted the difficulty of "parsing a [sentencing] transcript to determine whether . . . a party had a meaningful opportunity to object" to the sentence pronounced by the district court.  *Id.* at 873 n.6.  Exercising our inherent supervisory powers over district courts, we announced a "new procedural rule" requiring district courts, after pronouncing sentence, "to ask the parties whether they have any objections to the sentence just pronounced that *have not previously been raised*."  *Id.* at 872 (emphasis added).  We reasoned that this new procedural rule would serve several related goals, including:  (1) providing the parties "a final opportunity" to make "any objections not previously raised"; (2) alerting the sentencing judge to any mistakes which may have been made in pronouncing the defendant's sentence, and thus providing the court an opportunity "to correct on the spot any error it may have made"; and (3) creating a more reliable record for this Court to determine "precisely which objections have been preserved" for appeal.  *Id.* at 872-73 (citations omitted).  In defining the scope of this new rule, we repeatedly emphasized that the rule applied only to those objections that "*have not previously been raised*."  *Id.* at 872-73 (emphasis added).

Our decision in *Bostic* thus requires that, to avoid plain-error review on appeal, a party must raise any objections regarding the district court's application of the § 3553(a) factors during the sentencing hearing.  But nothing in our decision in *Bostic* suggests that a post-sentencing objection is the only way to preserve a claim for appeal.

Nor does *Bostic* impose upon the defendant the obligation to challenge the "procedural reasonableness" of his sentence before the district court.  In fact, because reasonableness is the *appellate* standard of review, *Rita*, 551 U.S. at 351, it would be improper for a defendant to raise such issues before the sentencing court.  *See United States v. Cruz*, 461 F.3d 752, 754 (6th Cir 2006) ("[R]easonableness represents the standard of appellate review, not the standard by which a district court imposes a sentence.").

On any reading, our decision in *Bostic* also does not speak to whether a general post-sentencing objection is sufficient to preserve a procedural claim where that party already has asserted the substantive grounds for that objection at earlier stages of the sentencing hearing.  Our decision in *Bostic* did not address that issue for the obvious reason that the government had failed to advise the district court of its opposition to the defendant's request for a downward departure at any point during the sentencing proceedings.  As the *Bostic* court explicitly noted, the government not only failed to file "any papers opposing that motion," the government's statements at the sentencing hearing also "did not inform the district court or defense counsel whether or not the government opposed the downward-departure motion."  *Id.* at 870, 871.

The only aspect of our decision in *Bostic* that is even arguably relevant is the statement in *dicta* that a party "must 'object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection.'" 371 F.3d at 871 (quoting *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980)). We reasoned that "[r]equiring clear articulation of any objection and the grounds therefor, 'will aid the district court in correcting any error, tell the appellate court precisely which objections have been preserved and which have been [forfeited], and enable the appellate court to apply the proper standard of review to those preserved.'" *Id.* at 873 (quoting *United States v. Jones*, 899 F.2d 1097, 1102-03 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993)). Because the government had failed to make *any* objection, however, our decision in *Bostic* offers absolutely no guidance as to what constitutes a "reasonable degree of specificity."  Nor did we consider in *Bostic* whether arguments made at earlier stages of

the sentencing hearing affect the obligation to state "the grounds" for any objection. In other words, these statements are *dicta* in the truest sense.

Our decision in *Vonner* is similarly unhelpful because, once again, the defendant in that case failed to assert a post-sentencing objection. Contrary to the majority's suggestion, our decision in *Vonner* thus offers little to no insight into how we are to determine whether a general objection is sufficient to preserve a procedural claim for appeal. If anything, our decision in *Vonner* supports a broader review than that conducted by the majority here.

Over several vigorous dissents, the en banc majority in *Vonner* put teeth to the rule announced in *Bostic*, essentially bifurcating the procedural burden for defendants who seek to challenge their sentence on appeal. In clarifying the "import" of the *Bostic* rule, however, the *Vonner* majority emphasized:

> The point of the [*Bostic*] question *is not to require counsel to repeat objections* or, worse, to undo previously raised objections. It is simply to give counsel one last chance to preserve objections for appeal that counsel *has not yet seen fit to raise or has not yet had an opportunity to raise*.

516 F.3d at 390 (emphasis added). The *Vonner* majority also explained that defendants are not required to challenge the reasonableness of their sentences in front of the district court, and explicitly stated that "neither the defense nor the government, in response to the *Bostic* question, has any obligation to raise objections already made." *Id.* Reiterating a fundamental premise of *Bostic*, the *Vonner* majority also emphasized that plain-error review applies only to "arguments for leniency that the defendant *does not present to the trial court*." *Id.* at 392 (emphasis added).

Our decision in *Vonner* thus expressly and unequivocally limits the scope of the plain-error standard to those claims that a party "*never* presented . . . to the district court," and requires a post-sentencing objection only as to those claims that the party

"has not yet had the opportunity to raise."[3]  *Id.* (emphasis added).  Because we confront neither of those circumstances here, *Vonner* does not require the application of plain-error review in this case.

Our decision in *Vonner* also does not support the majority's suggestion that a post-sentencing objection is required to preserve a procedural claim for appeal.  In *Vonner*, we held only that, "[i]f a sentencing judge asks this question and if the relevant party does not object, then plain-error review applies on appeal to those arguments *not preserved* in the district court."  516 F.3d at 385 (emphasis added).  We did not hold, however, that raising an objection after the court pronounced sentence is the *only* way to preserve an argument for appeal.  In fact, the numerous assurances in both *Bostic* and *Vonner* that this new procedural rule applied only to those arguments that a party "had *never* presented" to the district court strongly suggest that a post-sentencing objection is not always required.

In any event, to read our decision in *Vonner* as creating some inflexible rule that demands application of plain-error review any time a defendant fails to raise a post-sentencing objection, as the majority does today, would be contrary to the "common-sense application of the plain-error doctrine" explicitly endorsed by the en banc majority in that case.  *Id.* at 391; *accord Herrera-Zuniga*, 571 F.3d at 580 (confirming that "the *Bostic* procedure and the *Vonner* forfeiture rule were adopted to serve practical ends, [and thus] it would be inappropriate to construe those requirements as formal and inflexible procedural protocols").

---

[3]Although purely *dicta*, the *Vonner* majority did surmise that, "[a]s best we can tell from our cases applying *Bostic*, the rule is thus apt to be relevant in three principal settings—where it is unclear whether the district court, in announcing its proposed sentence, considered all of the § 3553(a) factors, adequately explained its reasons for imposing the sentence or adequately addressed the parties' sentencing arguments."  516 F.3d at 390.  Critically, however, the *Vonner* majority did not venture a guess as to whether a defendant also is required to restate the substantive basis of his or her objection in any of those three situations if he or she already had set forth the substance of the objection at an early stage of the sentencing hearing and subsequently responded to the *Bostic* question in the affirmative, as occurred here.

## C.

The majority's determination that Simmons has forfeited his procedural claims not only reaches beyond the scope of our decisions in *Bostic* and *Vonner*, it also is contrary to our subsequent case law.

In *United States v. Blackie*, *supra*, the defendant, Kerry Blackie ("Blackie"), claimed on appeal that the district court had "failed to consider" various arguments that he had raised under § 3553(a) in favor of a lower sentence. 548 F.3d at 398. As in Simmons' case, one of Blackie's arguments related to unwarranted sentencing disparities. Also like Simmons' case, although Blackie had raised his disparity argument "prior to and during the sentencing hearing," defense counsel made "no objection" regarding the court's failure to address his disparity argument. *Id.* Notwithstanding defense counsel's failure to raise the issue in a post-sentencing objection, we held that plain-error review did not apply to the defendant's (technically distinct) procedural claim. On the contrary, we explicitly held that Blackie's prior arguments were sufficient to "preserv[e] it for appeal." *Id.*

Because the facts and circumstances of this case are on all fours with those presented in *Blackie*, we are compelled to follow the reasoning and holding of *Blackie*.[4] *See* 6 Cir. R. 206(c) ("Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel."); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (holding that prior reported panel decisions are binding on all subsequent panels "unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision"). In fact, there is a greater argument

---

[4]The majority misrepresents both the dissent's argument regarding the import of *Blackie* and the holding of the case itself. Blackie's objection to the court's alleged lack of consideration of his family ties was *procedural* as well as *substantive*. Blackie alleged that the district court had not properly considered the relevant § 3553(a) factors, which this Court reviewed for reasonableness by first concluding that the district court had addressed the factors, i.e., this aspect of the sentencing was procedurally reasonable, and that the district court's weighing of those factors was not an abuse of discretion, i.e., the sentence was substantively reasonable. Therefore, *Blackie* does direct this Court to engage in a reasonableness review, rather than a plain error review, of a procedural objection that was not raised post-sentencing but was raised "prior to and during the sentencing hearing." 548 F.3d at 398.

that plain-error review does not apply here given that Simmons' counsel, unlike Blackie's counsel, at least raised a procedural objection "for the record" after sentencing.

Our holding in *Blackie* that post-sentencing objection is not required to preserve a procedural claim for appeal does not stand alone. On the contrary, this Court repeatedly has held that a party is not always required to assert a post-sentencing objection to preserve such claims. *See Herrera-Zuniga*, 571 F.3d at 581 n.7 (rejecting the notion that defense counsel is required to assert a post-sentencing objection to preserve certain procedural claims for appeal); *United States v. Grams*, 566 F.3d 683, 686 n.1 (6th Cir. 2009) (per curiam)[5] (declining to apply plain-error review even though defense counsel did not object after sentencing). The majority's application of plain-error review cannot be squared with the holding and reasoning of these controlling cases.

### III.

Not only is the majority's ultimate conclusion that Simmons forfeited his procedural claims in error, so too is its entire approach to this question. In defining the parameters of its forfeiture inquiry, the majority insists that defense counsel's post-sentencing objection must stand on its own. Maj. Op. at 8 (stating that "we must determine whether defense counsel's vague response to the *Bostic* question is sufficient to secure a lower standard of review for the defendant's procedural objection"). According to the majority, Simmons' arguments prior to and during the sentencing hearing are irrelevant to the forfeiture inquiry because the rule we adopted in *Bostic* somehow obviates the need for us to consider such contextual factors in determining whether a party has preserved a claim for appeal.

---

[5]In *Grams* the government brought the procedural error to the attention of the Court post-sentencing, which did not happen in Simmons' case. However, it does not follow that in Simmons' case neither *Bostic* consideration – whether the district court had an opportunity to address the objection and whether we have a detailed record to review – was "vindicated here." Maj. Op. at 8 n.3. Since defense counsel had repeatedly discussed Simmons' 100:1 disparity argument and his procedural objection to a sentence that did not consider that disparity, the district court had ample opportunity to address the argument and to develop the record for review. The former *Bostic* consideration is certainly vindicated here, and Simmons should not be held to a plain error standard for the district court's error in failing to vindicate the latter by failing to make a clear record for review.

The approach endorsed by the majority is profoundly flawed and fundamentally unjust.

## A.

**The *Bostic* Procedure Did Not Eliminate the Need for a Contextual Inquiry**

The majority contends that the rule we adopted in *Bostic* has brought "clarity and certainty" to sentencing proceedings in this circuit, and thus we no longer need to conduct a "holistic review of the record" to determine the sufficiency of a party's objection.  Maj. Op. at 10 n.5.  Generally speaking, the majority is correct that the rule we adopted in *Bostic* was intended to bring clarity to our review of sentencing challenges.  However, whatever limited clarity that the *Bostic* procedure has brought to sentencing procedures in this circuit is entirely irrelevant to the question we confront in this case.

As explained above, the issue before us in *Bostic* had nothing to do with determining the adequacy of a party's post-sentencing objection.  Rather, the confusion with which we were concerned in that case related specifically to the "difficulty of parsing a transcript to determine whether . . . a party had a meaningful opportunity to object."  371 F.3d at 872 n.6.  The *Bostic* procedure was intended to address only the unique difficulties related to that particular issue, it was not intended to alleviate all potential uncertainties in the sentencing process.

Nor has the *Bostic* procedure had any unintended effect on our obligation to conduct a contextual inquiry in determining the adequacy of a party's objection.  An appellate court encounters unique difficulties in trying to read between the lines to determine whether a party had a "meaningful" opportunity to object because the sentencing transcript cannot reflect pauses, nonverbal cues, and other elements of the exchange between counsel and the court that may have affected whether an opportunity was meaningful rather than fleeting.  Because of this unique concern, our subsequent case law has insisted upon a strict application of the requirements that the *Bostic* procedure imposes *on district courts*.  *See United States v. Gapinski*, 561 F.3d 467, 473-

74 (6th Cir. 2009) (refusing to apply plain-error standard where the district court's post-sentencing inquiry was vague); *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (same); *United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006) ("A district court can satisfy the requirements of the *Bostic* rule only by clearly asking for objections to the sentence that have not been previously raised, and the context of the transcript in this case reveals why this is so."). But, because we do not confront these same concerns in all other contexts, we have not construed the forfeiture rule we announced in *Vonner* in the same manner. *See Herrera-Zuniga*, 571 F.3d at 581 n.7 (declining to apply plain-error review even though defense counsel failed to include all procedural claims in the post-sentencing objection because a holistic review of "the sentencing transcript indicate[d] that the district court was not going to correct this issue 'on the spot,' as the sentencing judge already had stated that he believed that he had the authority to reject the advisory sentencing range on this basis"); *Grams*, 566 F.3d at 686 n.1 (declining to apply plain-error review even though defense counsel "did not object [after sentencing] to the district court's failure to explain adequately its 72-month sentence" because "the government brought the procedural error at issue to the district court's attention after it imposed sentence")[6]; *Vonner*, 516 F.3d at 391 ("Better, we think, to leaven the rule with a common-sense application of the plain-error doctrine and with an eye to the realities of the facts and circumstances of each sentencing proceeding.").

In fact, our decisions in both *Bostic* and *Vonner* expressly and repeatedly note that plain-error review applies only to those objections that "have not previously been raised," *see, e.g.*, *Bostic*, 371 F.3d at 872; *Vonner*, 516 F.3d at 390, which actually seems to *require* that we review the record to determine what arguments a party already had raised. As our decision in *Vonner* expressly states, a reviewing court should consider the "circumstances of each sentencing proceeding" to determine whether plain-error review is appropriate. 516 F.3d at 391.

---

[6]This aspect of our decision in *Grams* is significant because *Vonner*, if read strictly, states that plain-error review applies whenever "the *relevant party* does not object." *See Vonner*, 516 F.3d at 385 (emphasis added). Our holding in *Grams* thus supports a flexible, contextual application of *Vonner*'s forfeiture rule, and provides a persuasive case study as to why construing *Vonner* more strictly would be counterproductive, unjust, and rather absurd.

A review of our post-*Bostic* case law demonstrates that the *Bostic* procedure did not eliminate the need for a contextual review beyond the limited issue we faced in *Bostic*. As the majority acknowledges, "our case law and the Federal Rules of Criminal Procedure indicate that as a procedural matter, the district judge must generally speak to arguments that are clearly presented and in dispute." Maj. Op. at 15. There are, however, a few very limited exceptions to this rule. One such exception is that the district court need not directly address "attenuated" arguments that a party raises merely in passing. *See United States v. Liou*, 491 F.3d 334, 339 n.4 (6th Cir. 2007) (rejecting the notion that a district court is required to address "each argument, whether frivolous or non-frivolous, that a defendant even *arguably* raises in support of a lower sentence" (emphasis in original)); *United States v. McGee*, 494 F.3d 551, 557-58 (6th Cir. 2007) (concluding that the district court need not address arguments that are "attenuated"). What the majority seems to overlook, however, is that this determination obviously requires us to evaluate the manner and circumstances in which the defendant raises his or her claim.[7] If this Court has no trouble conducting such an inquiry to determine the extent of the district court's obligation to explain its reasoning, then we should have no trouble conducting a nearly identical inquiry to determine the standard of review that applies. The contextual review of the record we conducted in these decisions casts serious doubt on the majority's claim that the *Bostic* rule eliminated or in any way diminished our obligation to consider context in assessing the sufficiency of a party's response to the *Bostic* question.

The narrow scope of the majority's inquiry also is inconsistent with this Court's context-based approach to resolving other procedural sentencing errors. For instance, Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure requires that sentencing judges "verify that the defendant and the defendant's attorney have read and discussed the presentence report." Recognizing the significant role that this requirement plays "in ensuring a just adjudication at the sentencing hearing," *United States v. Mitchell*, 243

---

[7] Not surprisingly, our sister circuits also conduct a contextual review of the record when evaluating whether the district court committed other procedural errors. *See, e.g.*, *United States v. Severino*, 454 F.3d 206, 214 (3d Cir. 2006) ("Isolating certain statements of the court to suggest that the court somehow felt obligated to follow the Guidelines ignores the context of those statements.").

F.3d 953, 955 (6th Cir. 2001), we have required "literal compliance" with its mandate, *United States v. Tackett*, 113 F.3d 603, 613 (6th Cir. 1997).  Like the rule announced in *Bostic*, we adopted this "literal compliance" requirement because it "helps to ensure that defendants are sentenced on the basis of accurate information and provides a clear record for appellate courts, prison officials, and administrative agencies who may later be involved in the case."  *Id.* at 613-14 (citing *United States v. Fry*, 831 F.2d 664, 667 (6th Cir. 1987)).

Notwithstanding this "literal compliance" requirement, a review of our case law makes clear that we are willing to overlook the district court's failure to comply with this strict requirement where the record demonstrates that the underlying purpose of the rule has been fulfilled.  In *United States v. Osborne*, 291 F.3d 908 (6th Cir. 2002), for instance, the district court unquestionably failed to inquire whether the defendant and his counsel had reviewed the presentence investigation report.  *Id.* at 910.  Overlooking this technical error, we conducted a "review of the hearing transcripts" to determine whether there was any indication that the defendant and his counsel had in fact done so.  *Id.* at 911.  We conducted a similar "review of the record" in *United States v. Tate*, 516 F.3d 459 (6th Cir. 2008), concluding that "the record, *when viewed as a whole*, does support the *inference* that [the defendant] had had an opportunity to read and discuss the revised PSR with [his counsel]."  *Id.* at 466 (emphasis added).

The narrow and rigid inquiry conducted by the majority stands in stark contrast to this practical approach, and the majority can offer no persuasive justification for this discrepancy.  Because the same interests underlie both the rule we adopted in *Vonner* and our "literal compliance" reading of Rule 32(i)(1)(A), our review of any deviation from those requirements should be based on similar factors, including the context in which the alleged deviation occurred.

**B.**

**The Supreme Court Has Endorsed, if not Required, a Contextual Inquiry**

Regardless of whatever *ad hoc* procedural rules this circuit has adopted, the Supreme Court's forfeiture jurisprudence suggests that a party's prior arguments are relevant in determining whether a more specific objection, or indeed any subsequent objection, is required to preserve a claim for appeal.  Our sister circuits uniformly have adopted this approach.  The majority's insistence that Simmons' counsel's post-sentencing objection "must stand on it own" thus cuts a troubling path that sets this circuit at odds with the approach endorsed by the Supreme Court.

In order to preserve a claim for appeal, a defendant generally is required to raise an objection which has "a specific substantive basis."  *United States v. Grissom*, 525 F.3d 691, 694 (9th Cir. 2008).  The reason for this requirement, as we recognized in *dicta* in *Bostic*, is that "[r]equiring clear articulation of any objection and the grounds therefor, 'will aid the district court in correcting any error, tell the appellate court precisely which objections have been preserved and which have been [forfeited], and enable the appellate court to apply the proper standard of review to those preserved.'" 371 F.3d at 873 (quoting *Jones*, 899 F.2d at 1102).  Requiring a specific objection thus "'serve[s] the dual purposes of permitting the district court to correct on the spot any error it may have made and of guiding appellate review.'"  *Id.* (quoting *Jones*, 899 F.2d at 1102).

The majority construes this requirement strictly, insisting that Simmons' claim is forfeited because his counsel failed to "specifically" identify the argument that the district court failed to consider.  What the majority fails to consider, however, is that providing a "specific substantive basis" for an objection is not always necessary. Rather, a general objection is sufficient to preserve a claim for review so long as the objection "is ample and timely to bring the alleged . . . error to the attention of the trial court and

enable it to take appropriate corrective action."**8** *Douglas v. Alabama*, 380 U.S. 415, 422 (1965). In fact, the Court has held that, in certain circumstances, a subsequent objection is not necessary at all. *See Osborne*, 495 U.S. at 124 ("[C]ounsel's failure to object on this point does not prevent us from considering [defendant's] constitutional claim. . . . because we are convinced that [defendant's] attorney pressed the issue . . . before the trial court and, under the circumstances, nothing would be gained by requiring [defendant's] lawyer to object a second time."). In both *Douglas* and *Osborne*, the Supreme Court conducted precisely the type of inquiry that the majority claims is not required here.

The Supreme Court's decision in *Rita* also suggests that a contextual inquiry is appropriate in this context. One of the issues the Court considered in *Rita* was whether the district court satisfied its statutory obligation to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). The Court emphasized that this requirement "reflects sound judicial practice" and helps promote the "public's trust in the judicial institution." 551 U.S. at 356. The Court noted, however, that the "appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Id.* The Court then went on to explain a district court could rely on "context and *the parties' prior arguments*" to make its reasons for choosing a particular sentence clear. *Id.* (emphasis added). The Court's decision in *Rita* thus assumes that the appellate courts are able to, and perhaps implies that we must, consider "context and the parties' prior arguments" in determining whether the district court provided an adequate explanation for its chosen sentence. If the parties' prior arguments are relevant in that context, certainly those same factors are relevant to determining whether a defendant's objection was sufficient to preserve a claim for appeal. At the very least, *Rita* casts serious doubt on the majority's supposition that a contextual inquiry is somehow too difficult in this context.

---

**8**Although *Douglas* addressed whether a defendant's general objection raising a federal claim in state court was adequate to preserve the federal issue for review, this same standard also governs in other contexts, including the situation before us here. *See, e.g.*, *United States v. Williams*, 985 F.2d 749, 755 (5th Cir. 1993) (applying the "general principle" announced in *Douglas* on direct appeal in determining the sufficiency of defense counsel's objection "to an earlier version of [a disputed jury] instruction" where defense counsel "made no further objection").

Following *Douglas*, our sister circuits overwhelmingly have recognized that "a general objection may suffice to preserve an issue for appeal" where the party already has raised the specific substantive grounds for the objection at earlier stages of the sentencing proceeding and the record demonstrates that the district court was—or at least should have been—aware of the issue. *See Grissom*, 525 F.3d at 694-95 (finding the government's general objection sufficient to preserve claim because the government "consistently advanced its view" throughout the sentencing hearing and the record indicates that "the district court was indeed fully aware of the government's position"); *United States v. Pineiro*, 470 F.3d 200, 204-05 (5th Cir. 2006) (holding that a party is not required "to express its objection in minute detail or ultra-precise terms," and concluding that the government preserved its opposition to recalculating the defendant's sentence by arguing throughout the sentencing hearing that the prior calculations were still appropriate); *United States v. Curry*, 461 F.3d 452, 459 (4th Cir. 2006) (excusing the government's failure to object at the end of the sentencing colloquy where the government argued the point vigorously throughout the hearing, such that it "made unmistakably clear its position"); *United States v. Toribio-Lugo*, 376 F.3d 33, 41 (1st Cir. 2004) (recognizing that the number of prior objections raising the same issue is relevant to evaluating defense counsel's failure to object yet again); *United States v. Shumard*, 120 F.3d 339, 340 n.1 (2d Cir. 1997) (finding that the government "clearly preserved [its] claims for appellate review" by "argu[ing] each of these claims at the sentencing hearing prior to the district court's disputed ruling"); *United States v. Thomas*, 953 F.2d 107, 109 n.2 (4th Cir. 1991) (finding defense counsel's "previous[] object[ions]" to admission of testimony and ruling that attorney-client privilege had been waived "were sufficient to preserve for appeal" defendant's procedural challenge to the propriety of the district court's *in camera* proceeding because those prior objections challenged "the basis" for the court's ruling); *United States v. Rothbart*, 653 F.2d 462, 464 (10th Cir. 1981) (finding defense counsel's general objection "lacked specificity" but was "sufficient" to preserve claim for appeal based on prior arguments raising the same substantive argument); *see also United States v. Clark*, 434 F.3d 684, 686 n.1 (4th Cir. 2006) (declining to review the government's argument for plain error even though

the government "failed to object at the second sentencing hearing to the district court's consideration of state sentencing practices" because the government had raised the claim in a supplemental brief submitted at an earlier stage of the sentencing proceedings). This rule applies, according to our sister circuits, even where the party's objection lacks a "specific substantive basis" and regardless of the "seeming facial inadequacy of the objection." *Grissom*, 525 F.3d at 694-95. In other words, our sister circuits have roundly rejected the proposition that a party's objection must be adequate "on its own" to preserve a claim for appeal.

Although the decisions of our sister circuits are not binding, we consistently have recognized their persuasive authority. *See Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 553 n.6 (6th Cir. 2007) ("[W]hile analogous decisions from our sister circuits are not binding, we have repeatedly recognized their persuasive authority."). This dictate applies with particular force in this context, both because of the overwhelming number of other circuits to have reached the same conclusion and because the rationale underlying those decisions flows directly from binding Supreme Court precedent. *See Osborne*, 495 U.S. at 124-25; *Douglas*, 380 U.S. at 422 ("No legitimate state interest would have been served by requiring repetition of a patently futile objection, already thrice rejected, in a situation in which repeated objection might well affront the court or prejudice the jury beyond repair.").

As explained above, I disagree with the majority's contention that *Bostic* and *Vonner* instruct us to disregard a defendant's arguments prior to and during the sentencing hearing when determining whether a post-sentencing objection is sufficient (or even necessary) to preserve a claim for appeal. If the majority is correct, however, then that aspect of our decisions in those cases is contrary to Supreme Court precedent and at odds with the overwhelming weight of persuasive authority from our sister circuits.

## C.

### A Contextual Inquiry Offers the More Sound Approach

Not only is a broader review of the record supported by the overwhelming weight of authority, it also offers the more sound approach.

From a practical perspective, taking context into account offers the superior approach because it eliminates the need for a defendant to reassert a claim after sentencing where the defendant already has "made unmistakably clear its position." *Curry*, 461 F.3d at 459. Insisting that a defendant repeatedly raise the specific substantive basis for a procedural objection also ignores that there may be legitimate reasons for the defendant to not want to continue to press a particular argument. *See Douglas*, 380 U.S. at 422. Where, as here, it is clear that a post-sentencing objection would do nothing to advance the goals identified in *Bostic*, it serves no practical purpose to punish a defendant for failing to abide by empty protocol.

Ignoring these practical concerns, the majority argues that requiring defense counsel to restate the specific substantive grounds for any post-sentencing procedural objection is necessary because otherwise "the *Bostic* question would be a meaningless formality whereby certain magic words are uttered and any new claim may be raised on appeal without consequence." Maj. Op. at 9. On the contrary, although a post-sentencing objection is not necessary to preserve for appeal those claims that the defendant already has asserted prior to or during the sentencing hearing, the *Bostic* question still helps ensure, as our decision in *Bostic* explained, that the parties have an opportunity to raise any objections *not previously raised*.

In fact, it is the approach endorsed by the majority that effectively elevates form over substance and improperly vests a party's response to the *Bostic* question with talismanic significance. Requiring a party to raise a post-sentencing objection makes little sense where the party already has made its position clear or where further objection would be futile. *See Herrera-Zuniga*, 571 F.3d at 581 n.7 ("it is difficult to imagine any practical reason to require a defendant to raise an objection that is patently futile"). By

turning a blind eye to context and circumstances, the rule adopted by the majority would "'force resort to an arid ritual of meaningless form,' . . . and would further no perceivable [governmental] interest." *James v. Kentucky*, 466 U.S. 341, 349 (1984) (quoting *Staub v. City of Baxley*, 355 U.S. 313, 320 (1958)). Simply put, ignoring a party's prior arguments transforms the "common-sense" rule we adopted in *Vonner* into a rigid procedural protocol, something this Court has made clear it is "loathe to do." *Herrera-Zuniga*, 571 F.3d at 580.

As this case demonstrates, the majority's approach also risks unfairly punishing a defendant for inartfully phrasing an objection to a sentence that was announced literally moments earlier, disregarding the practical difficulties that defense counsel confront in making such objections on the spot and without the benefit of having reviewed the transcript to determine what issues the sentencing judge failed to address. While I believe that the record in this case shows that the district court failed to provide an adequate explanation of its decision to reject Simmons' crack/powder argument, the majority evidently does not share that view. In fact, the majority is of the opinion that the record "strongly suggests" that the sentencing judge adequately addressed the issue. Maj. Op. at 12. If fair-minded appellate court judges who have the benefit of being able to review and dissect the minutiae of the transcript can disagree about such matters, it is fundamentally unfair to punish a defendant for his or her counsel's failure to identify the issue on the spot. The Supreme Court recognized as much in *Estelle v. Smith*, 451 U.S. 454 (1981), where it affirmed the Fifth Circuit's determination that a defendant did not forfeit his Fifth and Sixth Amendment claims by failing to raise them when objecting to testimony introduced during his sentencing. *Id.* at 468. As the Fifth Circuit reasoned, defense counsel "[could] scarcely be faulted for failing to enumerate all of the many constitutional rights that the state violated" so soon after the state unexpectedly presented the disputed testimony. *Smith v. Estelle*, 602 F.2d 694, 709 n.19 (5th Cir. 1979). Without the benefit of the transcript, it may not be possible for defense to identify those specific aspects of the sentencing pronouncement that he or she contends

is legally insufficient.**9**  The narrow scope of the majority's inquiry fails to take into account, as the Supreme Court has instructed, "the realities of trial." *Lee v. Kemna*, 534 U.S. 362, 382 (2002).

### D.

### The Majority's Stated Justification for Applying Plain-Error Review is Fundamentally Unfair, Unpersuasive, and Contrary to Law

Notwithstanding these countervailing considerations, the majority argues that "application of a higher standard of review in cases like this one will discourage parties from making vague objections that deprive this court of a more complete record to review." Maj. Op. at 10.  This argument is completely unpersuasive and reveals that the majority fundamentally misunderstands the principles involved.  Punishing Simmons for the district court's oversight is counterintuitive and will do almost nothing to encourage better sentencing practices.

The record undeniably shows that Simmons raised his crack/powder disparity argument at least twice prior to the district court's pronouncing his sentence.  The record also makes clear that this was Simmons' primary argument in favor of a lower sentence and that defense counsel raised this issue for the final time mere moments before the district court began pronouncing sentence.  Because Simmons vigorously pursued this argument at every opportunity, the sentencing court already was—or at least should have

---

**9**The unfairness of the majority's approach is amplified in this context because of the lingering confusion in this circuit as to what types of claims relate to the "procedural" aspects of a defendant's sentence.  Contrary to the majority's suggestion, we repeatedly have recognized that the procedural and substantive components of the reasonableness inquiry are inextricably interwoven. *See United States v. Jones*, 489 F.3d 243, 252 n.3 (6th Cir. 2007) (acknowledging that the procedural and substantive components of our reasonableness inquiry "appear to overlap").  Consequently, defense counsel may be justifiably confused as to what types of claims need to be preserved via a post-sentencing objection, and which require no such objection. *See, e.g.*, *United States v. Carson*, 560 F.3d 566, 585 (6th Cir.2009) (confusingly identifying "failing to consider the § 3553(a) factors" as a basis for finding a sentence "procedurally unreasonable" and "fail[ing] to consider pertinent § 3553(a) factors" as a basis for finding a sentence "substantively unreasonable"); *United States v. Brinda*, No. 07-6357, 321 F. App'x 464, 467 (6th Cir. Apr. 15, 2009) ("Here, [the defendant] says that the sentence was substantively unreasonable because the district court failed to consider unwarranted disparities as required by 18 U.S.C. § 3553(a)(6).").  Given that Simmons' claim relates to the district court's failure to consider a pertinent § 3553(a) factor, the fact that this Court has identified such claims as relevant to both the substantive and procedural aspects of our reasonableness inquiry strongly militates against applying plain error review simply because defense counsel did not raise the issue in response to the *Bostic* question. *See Herrera-Zuniga*, 571 F.3d at 579-81.

been—fully aware of Simmons' argument. Despite Simmons' more than adequate efforts to bring this issue to the court's attention, the sentencing judge completely failed to explain his reasons for rejecting the argument. Instead, the district court made one vague reference to "unwarranted" disparities.

While there is no doubt from the record as to the substantive basis of Simmons' request for a lower sentence, it is entirely unclear whether the sentencing judge ever considered the issue. The majority, however, concludes that Simmons is to blame for this mistake, reasoning that "If Simmons's defense counsel had made a more specific objection, the judge might have defended his decision and we, in turn, would have the benefit of his explanation in assessing the adequacy of the proceedings." Maj. Op. at 10. But, as this statement reveals, even if defense counsel had raised a more specific objection, the best we could have hoped for is that the judge "*might*" have provided a fuller explanation of his reasoning. According to the majority, the district court's initial failure to address Simmons' argument did not constitute procedural error. Presumably, then, neither would the district court's failure to provide a fuller explanation of its decision in response to a post-sentencing objection.

In other words, the reason that we do not "have the benefit of [the district court's] explanation in assessing the adequacy of [these] proceedings" is not that defense counsel's objection was too vague, but rather that this Court too often has been willing to overlook the failure of sentencing judges to fulfill their obligation to adequately explain the reasons for their sentencing decisions. This trend obviously cannot be cured by applying *Vonner*'s forfeiture rule more strictly because applying plain error review does nothing to resolve the more fundamental shortcomings of our sentencing jurisprudence. In fact, as this case demonstrates, insisting on plain error review actually masks the failure of the district court to provide an adequate explanation of its sentencing decisions.

The Supreme Court understandably reasoned in *Rita* that the adequacy of the district court's sentencing explanation may "depend[] upon circumstances." 551 U.S. at 356. When this deference to the district court is combined with *Vonner*'s forfeiture

rule, however, it creates a palpably unfair dynamic. If the district court is not required to address every argument raised by the defendant, then requiring a defendant to raise a post-sentencing objection does absolutely nothing to further the practical goals we identified in *Bostic*, and the entire procedure becomes a hollow, meaningless formality. The entire process becomes a one-way ratchet that raises the bar for all defendants, while doing almost nothing to help clarify the record for appeal.[10] If we were genuinely interested in achieving the goals we identified in *Bostic*, then *Vonner*'s forfeiture rule must be combined with a sensible, practical rule requiring district courts to consider and adequately address all nonfrivolous arguments raised by a defendant. If clarity is not required, then there is no point in requiring a defendant to ask for clarification. Where a defendant repeatedly raises a nonfrivolous argument and the district court fails to explain its reasons for rejecting that argument, we should hold the court accountable, not the defendant. That is precisely why, as I explain below, our sentencing decisions have gone beyond the rule announced in *Rita* to require that the district court adequately explain its reasons for rejecting any and all nonfrivolous arguments raised by a defendant.

By placing the onus for creating an adequate record on the defendant rather than the sentencing judge, the majority does nothing to address the fundamental problem. After today's decision, we still will be forced to parse the sentencing transcript to determine whether the district court conducted the requisite individualized assessment of the § 3553(a) factors, and we still will be left guessing at whether the court considered all of a defendant's nonfrivolous arguments. And where a defendant raises a post-sentencing objection asking for clarification, we still will be left merely hoping that the court provides a more adequate explanation for its sentencing decisions. In other words,

---

[10] Even a cursory review of our sentencing cases demonstrates that this is no hollow concern. In far too many cases, sentencing judges refuse to provide a more specific explanation of their reasoning even where the parties request clarification. *See, e.g.*, *Herrera-Zuniga*, 571 F.3d at 577 (although defense counsel advised the district court of the substantive basis of a potential error in the sentencing pronouncement, the court responded by stating only that "You have a right to appeal this sentence, Mr. Herrera."); *Grams*, 566 F.3d at 685 (although the government advised the court of a potential error in the court's sentencing pronouncement, the court responded by stating that it was "well aware" of the error but that it considered the issue "negligible").

the practical implication of the majority's approach is that poor sentencing practices will continue to get swept under the rug.

The only reliable way to overcome these problems is to require greater clarity in the court's sentencing pronouncement, not just in the defendant's post-sentencing objections. *See Grams*, 566 F.3d at 686 (recognizing that "greater clarity [on the part of the sentencing judge] in open court would have aided our appellate review"); *Blackie*, 548 F.3d at 401-03 (explaining that our procedural requirements regarding the district court's sentencing pronouncement are "more than mere administrative burdens or meaningless formalities, but rather assure that . . . adequate explanation is provided to allow for meaningful appellate review and the perception of a fair sentence"). Addressing the court's errors directly would do much more to achieve the majority's professed concern for clarity in the sentencing record than applying plain-error review. Instead, the majority overlooks the district court's failure to address Simmons' central argument on the grounds that the district court "'deserve[s] the benefit of the doubt,'" despite the fact that, as the majority acknowledges, its sentencing explanation is "short of ideal in assuring this court that the trial judge in fact did his full duty." Maj. Op. at 22 (quoting *Vonner*, 516 F.3d at 392), 12. Therein lies the real problem.

The only justification the majority offers for its counterintuitive approach is the baseless assertion that Simmons alone "bears responsibility for this silence in the sentencing record under our adversarial system as interpreted in *Vonner*." Maj. Op. at 20 n.9. This reasoning is profoundly flawed. Regardless of how the parties respond to the *Bostic* question, the district court always is obliged to "provide a clear explanation of why it has either accepted or rejected the parties' arguments." *Bolds*, 511 F.3d at 580. This requirement reflects the fact that the Federal Rules of Criminal Procedure require the district court to rule on all disputed matters in pronouncing sentence, *see* Fed. R. Crim. P. 32(i)(3)(B), as well as the statutory requirement that the court, "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c). In discussing this obligation, the Supreme Court has emphasized that a "statement of reasons is important" because it is the only way a

district court can demonstrate to reviewing courts that it fulfilled its statutory obligation to consider the factors set forth by Congress § 3553(a). *Rita*, 551 U.S. at 356 ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."). In other words, this circuit's case law, controlling Supreme Court precedent, the Federal Rules, and the governing statute all reject the majority's assertion that Simmons somehow bears "responsibility for this silence."

Perhaps not surprisingly, this discomforting aspect of the majority's holding reflects a central flaw with our decision in *Vonner*, where the en banc majority denied the defendant's procedural reasonableness challenge despite acknowledging that "[n]o one would call [the district court's] explanation ideal," and conceding that the district court "did not specifically address all of [the defendant's] arguments for leniency" and thus "failed to ensure that the defendant, the public and, if necessary, the court of appeals understood why the trial court picked the sentence it did." 516 F.3d at 386. What makes such statements all the more troubling is that the *Vonner* majority was so tolerant of the sentencing judge's mistakes despite noting that "[c]riminal sentencing is a serious business, and we should encourage district court judges to adopt sentencing practices that resolve potential sentencing disputes at the hearing, not on appeal." *Id.* at 391.

At some point, this disturbing pattern should alert us to the obvious fact that the far better approach to this problem is to articulate, once and for all, a clear and unequivocal requirement that district court judges must consider and address every nonfrivolous argument raised by a defendant in support of a lower sentence. So long as we continue to tolerate such obvious deficiencies, we cannot seriously expect to achieve the type of clarity that the majority contends is so important.

**E.**

**Judicial Economy Does Not Support the Majority's Flawed Approach**

The majority also attempts to justify its approach on the basis of judicial economy, reasoning that "[p]roviding disincentives for parties who do not give the district court an opportunity to resolve objections helps conserve judicial resources by deterring unnecessary delay and the need to appeal." Maj. Op. at 8–9. But that "sensible and useful feature of *Bostic*," *Vonner*, 516 F.3d at 391, while undoubtedly important, cannot possibly outweigh the fundamental unfairness that results.[11]

Even when the majority's concern is taken into account, it would be more practical and effective to require district courts to address a defendant's arguments in the first place. And while I fully agree that "[a] district judge should not have to guess what arguments an objecting party depends on," *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988), and that the sentencing judge should not be "'sandbagged' by a [party's] failure to object," *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991), the test set forth in *Douglas* and confirmed in *Rita* already addresses those concerns by asking whether the party's prior arguments adequately apprised the district court of the issue.

**F.**

**The Technical Distinction to which the Majority Retreats Is Unpersuasive**

Nor is the majority's position justified because Simmons initially raised the crack/powder disparity issue as the basis for his request for a lower sentence, which, technically speaking, is a distinct claim from the procedural error he claims the district court committed by failing to adequately explain its reasons for rejecting that argument. According to the majority, a party is required to specifically allege the substantive grounds for any post-sentencing procedural objection because such claims arise only

---

[11]In fact, the approach endorsed by the majority turns *Bostic* on its head. The majority transforms what obviously was intended as a procedural rule that would assist *district courts* in fulfilling their obligation to create an adequate record for appeal, *see Bostic*, 371 F.3d at 872, into an onerous burden on defendants. The interests identified in *Bostic* do not support the majority's misguided approach.

after the district court has pronounced sentence and thus the party's prior arguments could not have preserved them. *See* Maj. Op. at 8 (characterizing such procedural claims as "additional objections" and "further objections"). Wielding this distinction like a sword, the majority effectively dismisses all of Simmons' prior arguments as irrelevant.

The majority's reliance on this technical distinction is misplaced and unpersuasive. Although Simmons' requests for a below-Guidelines sentence technically raises a distinct claim from his procedural claim, it is a distinction without a difference. Simmons' prior arguments in favor of a lower sentence and his procedural objection are based on and arise out of the same substantive issue. Consequently, Simmons' prior arguments inform any reading of his subsequent objection. *See Osborne*, 495 U.S. at 124-25; *Douglas*, 380 U.S. at 422.

It is for that reason that the courts do not attach significance to this technical distinction in other contexts. For example, where a party moves to exclude certain evidence from trial and the district court denies that request, the party is not required to contemporaneously object when the evidence is admitted, and certainly not moments after the court rules on the motion. *See* Fed. R. Evid. 103(a) ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."); *see also United States v. Carpenter*, 494 F.3d 13, 18-19 (1st Cir. 2007) (holding that once the court rules on a party's motion to exclude, a contemporaneous objection is not required because "a renewed objection or offer of proof at the time the evidence is to be offered is more a formalism than a necessity" (citation omitted)). Although the claim on appeal in such cases technically is distinct from the claim underlying the party's motion *in limine*, it is a distinction to which courts attach no significance.

**G.**

**The Imbalance of the Inquiry Conducted by the Majority is Fundamentally Unfair**

While there is no doubt from the record as to the substantive basis of Simmons' request for a lower sentence, it is entirely unclear whether the sentencing judge ever considered the issue. The majority bends over backwards to accommodate the district court's oversight, grasping at straws to locate any crumb of support for its contention that the district court considered Simmons' argument. In doing so, the majority hypocritically conducts precisely the type of contextual review of the record that it claims *Bostic* rendered unnecessary and that it insists we should not afford to the defendant. This inconsistency is troubling in the extreme.

Frankly, it is stunning to consider the lengths to which the majority apparently is willing to go to explain away the district court's errors, while at the same time strictly construing the procedural hurdles a criminal defendant must clear before being entitled to have the reasonableness of his or her sentence reviewed by this Court. For instance, the majority finds it important, if not dispositive, that Simmons' crack/powder disparity argument was a "substantive claim regarding the Guidelines' disparate treatment" Maj. Op. at 14, but seems unconcerned by the fact that the district court's one-sentence dismissal of any concern about "unwarranted disparities" amounts to mere sentencing boilerplate.

Something is profoundly wrong with a rule that requires a defendant to articulate the specific substantive basis for his objection to a perceived error, and yet tolerates a sentencing court's utter failure to articulate any basis for rejecting a defendant's primary argument in favor of a lower sentence. As the Supreme Court has recognized:

> Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

*Hormel v. Helvering*, 312 U.S. 552, 557 (1941). For that reason, the Supreme Court's default and forfeiture decisions, "while recognizing the desirability and existence of a general practice under which appellate courts confine themselves to the issues raised below, nevertheless do not lose sight of the fact that such appellate practice should not be applied where the obvious result would be a plain miscarriage of justice." *Id.* at 558. And as I noted in a similar case decided under *Vonner*: "To uphold such a procedurally infirm sentence, as the majority seems content to do, is to abdicate this Court's responsibility to insure constitutionally sound sentencing practices." *Houston*, 529 F.3d at 759 (Clay, J., dissenting).

## H.

### Perhaps the Time Has Come to Revisit the Holding of *Vonner*

As I explained above, I do not believe that the inquiry conducted by the majority is compelled by, or even supported by, our decision in *Vonner*. However, if the majority's forfeiture ruling in fact is required under *Vonner*, then the time may have come for the en banc Court to revisit the rule we announced in that case. In putting teeth to the rule announced in *Bostic*, the *Vonner* majority reasoned:

> No doubt, we could encourage district courts to ask the *Bostic* question without imposing any consequences on a party's failure to answer it. But that would undermine its effectiveness. Better, we think, to leaven the rule with a common-sense application of the plain-error doctrine and with an eye to the realities of the facts and circumstances of each sentencing proceeding. And if that does not work, we of course have the right to reconsider the application of the rule in a future case.

516 F.3d at 391. In light of the majority's ruling today, it is obvious that the time has come already for us to "reconsider the application" of this deeply flawed rule. Today's ruling demonstrates that we must craft a more practical and just means of achieving the interests identified in *Bostic*.

**IV.**

Because *Bostic* and *Vonner* do not provide the framework necessary for resolving the question now before us, let alone dictate the outcome here, we should be guided by the "general principle" announced by the Supreme Court in *Douglas* and *Osborne*. Under that approach, Simmons' arguments prior to and during the sentencing hearing are critical:  either because they were sufficient, standing alone, to preserve his right to raise a procedural claim on appeal, *see Blackie*, 548 F.3d at 401; or because they must be considered in determining whether defense counsel's post-sentencing objection was sufficient to preserve Simmons' procedural claims for appeal, even if that objection was facially inadequate, *see Grissom*, 525 F.3d at 694-95.  Either way, Simmons did enough to preserve his right to challenge the procedural aspects of his sentence on appeal.

As the record demonstrates, Simmons first raised the crack/powder disparity argument in the sentencing memorandum that he submitted to the court prior to his sentencing hearing.  Simmons' memorandum specifically identified the crack/powder disparity issue as "the preeminent guideline issue that must be considered" in this case, J.A. 24, and vigorously argued in favor of a below-Guidelines sentence on the grounds that the 100-to-1 sentencing ratio endorsed under the Guidelines was greater than necessary to accomplish the sentencing goals set forth by Congress in § 3553(a) and led to unwarranted sentencing disparities.  At the sentencing hearing, Simmons' counsel reiterated this line of argument, expressly arguing that the "100-to-1 ratio results in a huge disparity in sentencing."  J.A. 70.

On this record, there can be no doubt that the sentencing judge was fully aware of the substantive grounds underlying Simmons' argument in favor of a below Guidelines sentence.   In fact, the sentencing transcript indicates that defense counsel raised the crack/powder disparity issue for the last time mere moments before the district court began pronouncing Simmons' sentence.   Under these circumstances, whether defense counsel could have articulated her "procedural" objection more artfully or with more detail is irrelevant.  *See Grissom*, 525 F.3d at 694-95.  Considering that Simmons had raised the specific substantive basis for the objection *twice* already, the sentencing

judge was—or at least should have been—fully aware of the substantive issues underlying any new procedural objection. Because the record makes clear that insisting on a more specific objection would serve no practical ends, there is no justification for imposing plain error review. *See Herrera-Zuniga*, 571 F.3d at 581 n.7; *Middleton v. Ercole*, No. 07-CV-2810, 2007 U.S. Dist. LEXIS 88308, at *29 (E.D.N.Y. Dec. 3, 2007) ("Since the purpose of the contemporaneous objection rule is to give trial courts the opportunity to correct their own errors, it might make sense to require less precision in specifying the error objected to when the error is so obvious that the trial court is, or should be, already aware of it.").

Because the record shows that Simmons repeatedly "pressed the issue" both in his sentencing memorandum and during the sentencing hearing, the rationale underlying *Bostic* is satisfied and "nothing would be gained by requiring [Simmons'] lawyer to object a [third] time." *Osborne*, 495 U.S. at 124.

## V.

In assessing Simmons' claims, the majority acknowledges that the district court's sentence is "terse," but concludes that it is "not per se inadequate." Maj. Op. at 12. The majority reaches that conclusion despite conceding that the district court's analysis was "short of ideal in assuring this court that the trial judge in fact did his full duty." Maj. Op. at 12. The majority's conclusion is contrary to controlling precedent and makes a mockery of this Court's sentencing jurisprudence. Even applying the burdensome plain-error standard of review, the district court's failure to consider and adequately explain its reasons for rejecting Simmons' central argument in favor of a lower sentence was procedurally unreasonable.

## A.

The reasonableness of a district court's sentence "has both substantive and procedural components." *Jones*, 489 F.3d at 250. Thus, the Court's "reasonableness review requires [inquiry] into both 'the length of the sentence' and 'the factors evaluated and the procedures employed by the district court in reaching its sentencing

determination.'" *Liou*, 491 F.3d at 338 (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)).

In order for a defendant's sentence to be procedurally reasonable, the district court cannot presume that the sentencing range recommended under the Guidelines is mandatory or even reasonable. *Gall*, 128 S. Ct. at 596-97. Instead, the court must "make an individualized assessment based on the facts presented." *Id.* at 597.

In *United States v. Bolds*, this Court laid out the three steps involved in the procedural-reasonableness review. "First, we must ensure that the district court 'correctly calculat[ed] the applicable Guidelines range' which [is] 'the starting point and initial benchmark' of its sentencing analysis." 511 F.3d at 579 (quoting *Gall*, 128 S.Ct. at 596) (footnote omitted). "[O]ur second task is to ensure that the district judge gave 'both parties the opportunity to argue for whatever sentence they deem appropriate' and then 'considered all of the § 3553(a) factors to determine whether they support the sentence requested by [each] party.'" *Id.* at 579-80 (quoting *Gall*, 128 S.Ct. at 596). "[O]ur final task is to ensure that the district court has 'adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.* at 580 (quoting *Gall*, 552 U.S. at 597). Because there is no dispute that the sentencing judge in this case satisfied the first requirement, we need address only whether the district court "considered all of the § 3553(a) factors" and "adequately explained" the sentence it imposed.

**B.**

For its part, the majority concludes that the district court satisfied both requirements. That conclusion, however, is utterly unsupported in the record and based on exceptions that are contrary to controlling authority.

In defining what constitutes an "adequate explanation" of a chosen sentence, this Court has reached seemingly inconsistent conclusions that turn heavily on the specific factual circumstances of a given case. For instance, the Court has held at times that "a sentencing judge is not required to explicitly address every mitigating argument that a

defendant makes," *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008), while at other times proclaiming that, "when the judge makes only a 'conclusory reference' to the § 3553(a) factors and does not address the defendant's arguments regarding application of those factors, then this court will find the sentence unreasonable." *United States v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008) (quoting *United States v. Thomas*, 498 F.3d 336, 340-41 (6th Cir. 2007)).  Because Simmons' appeal lies at the fracture point of this Court's still-developing procedural reasonableness jurisprudence, it is critically important to distill the guiding principles that underlie our decisions in this area, and to identify those factors that explain and account for these seemingly divergent outcomes.

Much of the diversity in the outcomes of these cases stems from the fact that district courts "may exercise discretion in determining how much of an explanation of the sentence is required because 'the amount of reasoning required varies according to context.'" *United States v. Jeross*, 521 F.3d 562, 582-83 (6th Cir. 2008) (quoting *Liou*, 491 F.3d at 338).  In *Madden*, for instance, the Court considered whether the district court failed to consider the defendant's contention that she should receive a reduced sentence because of her "diminished capacity."  515 F.3d at 611.  After reviewing the record, the Court acknowledged that "[t]he district court, to be sure, did not specifically address each of the reasons for a lower sentence that [the defendant] set forth in her motion."  *Id.*  Nevertheless, the Court affirmed the sentence, holding that "[e]ven where . . . the defendant presents an arguably nonfrivolous reason for imposing a sentence below the Guidelines range, the judge is not always required to address the specific argument."  *Id.* at 611-12 (citing *Rita*, 551 U.S. at 356-57).

The principle announced in *Madden*, however, cannot be reconciled with the controlling principles announced by the Supreme Court in *Rita*.  In *Rita*, the Supreme Court explained that, generally, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances."  551 U.S. at 356. Thus, in the Court's view, "[s]ometimes a judicial opinion responds to every argument; sometimes it does not . . . .  The law leaves much, in this respect, to the judge's own professional judgment."  *Id.*  The Court clarified, however, that in the context of

determining what sentence is appropriate in light of the factors explicitly set forth by Congress in § 3553(a), the sentencing judge at least "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* The Court then noted that, "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Id.* The Court explained further, however, that:

> Where the defendant or prosecutor presents *nonfrivolous reasons* for imposing a different sentence, however, the judge will normally go further *and explain why* he has rejected those arguments. Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation. . . . By articulating reasons, even if brief, the sentencing judge not only assures reviewing courts (and the public) that the sentencing process is a reasoned process but also helps that process evolve.

*Id.* at 357 (emphasis added).

The Supreme Court's decision in *Rita* thus suggests that, where a defendant raises a nonfrivolous argument in favor of a reduced sentence, the district court, at a minimum, should "articulat[e] reasons, even if brief," for rejecting each argument. Notwithstanding the discretion of the district court recognized in *Rita*, this Court has held that a sentencing judge "*must* . . . at least 'set forth enough [explanation] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *Jeross*, 521 F.3d at 583 (quoting *Rita*, 551 U.S. at 356) (emphasis added). Relying on *Rita*, this Court repeatedly has held that, even though the district court need not "recite" all of the factors set forth in § 3553(a) in announcing a defendant's sentence, it nonetheless "must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005). As we recognized in *United States v. Gale*, 468 F.3d 929 (6th Cir. 2006), where "a defendant's argument and supporting evidence presents an arguably meritorious claim for a lesser sentence, but there is little to suggest that the district court actually considered it, then remand may

be appropriate." *Id.* at 940. This point seems well-settled enough that even the majority recognizes, to its credit, that "our caselaw and the Federal Rules of Criminal Procedure indicate that the district judge must generally speak to arguments that are clearly presented and in dispute."[12] Maj. Op. at 15.

This Court articulated perhaps its strongest statement to this effect in *United States v. Richardson*, 437 F.3d 550 (6th Cir. 2007), where we stated:

> We emphasize the obligation of the district court in each case to communicate clearly its rationale for imposing the specific sentence. Where a defendant raises a *particular argument* in seeking a lower sentence, the record *must reflect* both that the district judge considered the defendant's argument and that the judge *explained the basis for rejecting it*. This assures not only that the defendant can understand the basis for the particular sentence but also that the reviewing court can intelligently determine whether the specific sentence is indeed reasonable.

*Id.* at 554 (emphasis added). Thus, while there is no requirement that the district court "engage in a 'ritualistic incantation to establish consideration of a legal issue'" or that the court "make specific findings relating to each of the factors considered," the sentencing court still "must articulate at least enough of its reasoning to permit an informed appellate review." *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999) (quoting *United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998)); *accord United States v. Penson*, 526 F.3d 331, 338 (6th Cir. 2008) ("[T]he district court provided virtually no explanation giving insight into the reasons for the specific sentence given."); *Bolds*, 511 F.3d at 580 ("The district court must provide a clear explanation of why it has either accepted or rejected the parties' arguments and thereby chosen the particular sentence imposed, regardless of whether it is within or outside of the Guidelines."); *Thomas*, 498 F.3d at 340 (vacating sentence as procedurally unreasonable because "[t]he record ma[de] clear that the district court considered the applicable Guidelines range, but not much else"); *Jones*, 489 F.3d at 252 ("The record reflects that

---

[12]One is left to wonder how the majority could possibly reach the outcome it does here having recognized that this is the controlling rule.

the district court considered all of Jones's arguments, the applicable Guidelines range, and the relevant § 3553(a) factors, and we therefore conclude that Jones's sentence was procedurally reasonable."); *see also Liou*, 491 F.3d at 340 (finding the record did not demonstrate procedural unreasonableness but emphasizing that "the better practice, post-*Rita*, is for a sentencing judge to 'go further and explain why he has rejected [each of the defendant's nonfrivolous] arguments' for imposing a sentence lower than the Guidelines range" (quoting *Rita*, 551 U.S. at 357) (alteration in *Liou*)).

## C.

Despite the fact that the district court did not so much as mention Simmons' primary and, as the majority concedes, nonfrivolous argument in favor of a lower sentence, the majority nevertheless concludes that the record "strongly suggests" that the district court considered the issue and found that other factors were simply more important, Maj. Op. at 12.  In reaching that conclusion, the majority accepts the government's baseless argument that the district court's judgment should be construed as "a rejection of an argument without merit that required no further explanation."  Maj. Op. at 16.  Not only is that conclusion utterly unsupported by the record, it also is directly contrary to this Court's controlling precedent—and the very fact that the majority is willing to make such bald inferences is troubling in the extreme.

As the litany of cases just discussed demonstrates, although the district court is not required to explicitly recount every aspect of that assessment in pronouncing sentence, the court must, at the very least, "'set forth enough [of a statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority.'" *United States v. Lalonde*, 509 F.3d 750, 769-70 (6th Cir. 2007) (alteration in original) (quoting *Rita*, 551 U.S. at 356).  Doing its best to concoct an exception to this rule, the majority suggests that we can *infer* from a district court's *silence* that it in fact has fulfilled that obligation with regard to an argument that the majority itself recognizes as nonfrivolous. But our case law unequivocally holds otherwise.  As the en banc Court concluded in *Vonner*, the question in each case "is whether '[t]he *record makes clear* that the

sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and took 'them into account' in sentencing him." 516 F.3d at 387 (quoting *Rita*, 551 U.S. at 358) (alteration in original) (emphasis added). The majority's conclusion that a ruling by implication satisfies this requirement stretches the rule of *Vonner* to the breaking point.

Notwithstanding the majority's suggestion to the contrary, this Court consistently has held that, "[w]hen a defendant raises a particular[, *nonfrivolous*] argument in seeking a lower sentence, the *record* must reflect both that the district judge considered the defendant's argument and *that the judge explained the basis for rejecting it*.'" *Lalonde*, 509 F.3d at 770 (internal quotation marks omitted) (emphasis added); *accord United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008) (holding that the district court must "properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence" (citing *Gall*, 128 S. Ct. at 597)); *United States v. Peters*, 512 F.3d 787, 789 (6th Cir. 2008) (holding that a sentence is not procedurally reasonable if, "[w]hen the defendant or prosecutor 'presents nonfrivolous reasons for imposing a different sentence,' . . . a sentencing judge [fails to] address the 'parties' arguments' and 'explain why he has rejected those arguments'" (quoting Rita, 551 U.S. at 357)); *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006) ("Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it."); *United States v. Buffington*, 310 F. App'x 757, 763 (6th Cir. 2009) ("Although the district court appears to have evaluated most of the § 3553 factors during the colloquy and commented on [the defendant's] criminal history, the judge never specifically addressed three of [the defendant's] four arguments in favor of a 180-month sentence. The judge's failure to respond to these three arguments provides neither [the defendant] nor this Court with any insight into why he found them unpersuasive. . . . Because the district court failed to provide a sufficient basis for its rejection of [the defendant's] arguments for a lower sentence, we conclude that the sentence is procedurally unreasonable."). This Court's sentencing jurisprudence thus unequivocally requires an "articulation [on the record] of

the reasons the district court reached the sentence ultimately imposed." *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005) (emphasis added); *see also Gall*, 128 S. Ct. at 599 (noting that, "[h]ad the prosecutor raised the issue, *specific discussion* of the point might have been in order" (emphasis added)).

Therefore, to evaluate procedural reasonableness, an appellate court must "review the sentencing transcript to ensure . . . that the sentencing judge adequately considered the relevant § 3553(a) factors *and clearly stated* his reasons for imposing the chosen sentence." *Liou*, 491 F.3d at 339 (emphasis added). In reviewing the sentencing transcript, the Court must determine whether the district court "provide[d] a *clear explanation* of why it has either accepted or rejected the parties' arguments and thereby chose the particular sentence imposed, regardless of whether it is within or outside of the Guidelines." *Bolds*, 511 F.3d at 580 (emphasis added). Requiring district court's to articulate their reasoning for the record makes perfect sense, otherwise the transcript would be devoid of any evidence that the district court ever considered the parties' arguments, let alone ruled on those issues.[13] Absent such a rule, this Court would be forced to make inferences and guess at what factors the district court actually considered—just as the majority does here.

The majority's conclusion that a *implied* ruling on a nonfrivolous argument is all that is required rips the heart out of this rule, ignoring this Court's consistent conclusion that it is the district court's obligation to create an appropriate record for appeal. *See, e.g.*, *Bostic*, 371 F.3d at 873 n.6 (adopting a new procedural rule to offset the inherent "difficulty of parsing a [sentencing] transcript"); *Herrera-Zuniga*, 571 F.3d at 580 (explaining that we adopted the *Bostic* procedure "to help create a more reliable record for appeals, which we believed would help 'guid[e] appellate review'" (quoting *Bostic*, 371 F.3d at 873)); *United States v. Johnson*, 553 F.3d 990, 996 n.1 (6th Cir. 2009) (vacating defendant's sentence on the ground that, "on the record before us, we have no way of ascertaining whether the district judge would have imposed the same sentence

---

[13]A clear explanation of the court's reasons for imposing the chosen sentence also "enable[s] the public to learn why [a] defendant received a particular sentence." *United States v. Molina*, 356 F.3d 269, 277 (2d Cir. 2004).

if he had known of his discretion to vary categorically from the crack-cocaine Guidelines based on a policy disagreement"); *Grams*, 566 F.3d at 686 (stating that "the district court should still have stated in open court whether it adopted in part or full the sentencing range and factual findings suggested by the probation office" because "greater clarity in open court would have aided our appellate review"); *Blackie*, 548 F.3d at 401-03 (explaining that our procedural requirements regarding the district court's sentencing pronouncement are "more than mere administrative burdens or meaningless formalities, but rather assure that . . . adequate explanation is provided to allow for meaningful appellate review and the perception of a fair sentence"); *Jackson*, 408 F.3d at 305 (explaining that the sentencing court's failure to provide an adequate of its reasons for imposing a chosen sentence "renders our reasonableness review impossible").

Although the district court has some discretion in determining how much of an explanation is required, our case law makes clear that simply ignoring a defendant's central and unequivocally nonfrivolous argument is never acceptable.[14] At a minimum,

---

[14]The government emphatically argues that sentencing courts are not required to explicitly discuss each § 3553(a) factor in announcing sentence. To be sure, the government's position finds some support in our case law. *See United States v. Williams*, 436 F.3d 706, 708-09 (6th Cir. 2006) (collecting cases). As noted above, this Court expressly held in *Madden* that, "[e]ven where . . . the defendant presents an arguably nonfrivolous reason for imposing a sentence below the Guidelines range, the judge is not always required to address the specific argument." 515 F.3d at 611-12 . And in *United States v. Johnson*, 403 F.3d 813 (6th Cir. 2005), we similarly concluded that, "[a]lthough the district court may not have mentioned all of the [§ 3553(a)] factors . . . explicitly, and although explicit mention of those factors may facilitate review, this court has never required the 'ritual incantation' of the factors to affirm a sentence." *Id.* at 816.

Given the factual circumstances presented here, however, the government's reliance on these cases is misplaced. In *Madden*, the Court affirmed the district court's sentence only because the "broader 'context and record' of the sentencing hearing" demonstrated that the district court "adequately considered [the defendant's] mitigating arguments." 515 F.3d at 611. Specifically, the Court noted that, during the hearing, the sentencing court "engaged in an extended discussion with both attorneys" about the defendant's mitigating arguments. *Id.* In addition, the terms of the sentence reflected that the district court had taken the defendant's particular circumstances into account. *Id.* (noting that the sentencing judge "repeatedly demonstrated that he was familiar with Brown's background and personal history, including her minimal role in the offense and her lack of a criminal history"). Finally, the Court noted that defendant's argument for a reduced sentence based on her "diminished capacity" or "aberrant behavior" was raised "only in passing." *Id.* In light of all these factors, the *Madden* Court reasoned that the district court's failure to explicitly discuss every argument raised by the defendant was not procedurally unreasonable. Unlike *Madden*, however, the record does not expressly show that the district court "was familiar" with Simmons' argument. Nor can it be said that Simmons raised the crack/powder issue "only in passing." Consequently, *Madden* offers no support for the government's position.

Our decision in *Johnson* also is inapposite because the Court's decision in *Johnson* Court did not confront the *procedural* unreasonableness issue. Indeed, this Court had yet to recognize procedural unreasonableness as a distinct sentencing error. Not until *United States v. McBride*, *supra*, did this Court explicitly recognize that there are "both substantive and procedural components to our reasonableness review." 434 F.3d at 475 n.3. *Johnson* thus sheds very little light on the issue before us here.

the sentencing transcript must demonstrate "that the sentencing judge adequately considered the relevant § 3553(a) factors *and clearly stated* his reasons for imposing the chosen sentence." *Liou*, 491 F.3d at 339 (emphasis added); *accord Houston*, 529 F.3d at 760 (Clay, J., dissenting) ("In short, well-established precedent requires reversal where the sentencing court fails to explain to the defendant, and this Court, how it arrived at its sentencing determination, including how it considered defense arguments and the § 3553(a) factors."). If the record does not indicate that the district court fulfilled that obligation, the Rules of Criminal Procedure and this Court's controlling precedent do not permit us to begin making excuses to explain away that error.

## D.

Applying that rule here, it is evident that the sentencing judge failed to "provide a clear explanation," *Bolds*, 511 F.3d at 580, as to why it rejected the § 3553(a) arguments raised by Simmons in favor of a downward variance, in particular, his crack/powder disparity argument. There is simply nothing in the record to suggest, let alone strongly suggest, that the district court ever considered Simmons' primary argument in favor of a lower sentence. For that reason, even if the majority were correct that the plain-error standard of review applies, controlling authority dictates that we find the district court's utter failure to explain its reasons for rejecting Simmons' arguments constitutes plain error. For that reason, I would set aside Simmons' sentence as procedurally unreasonable.

In announcing Simmons' sentence, the district court properly recognized that "*Booker* requires judges not only to consider the guideline range but also to consider other factors listed in [18 U.S.C. § 3553(a)] in determining the appropriate sentence." J.A. 75. The district court then proceeded to consider the various factors at issue. As to "the nature and circumstances of the offense," the district court concluded that the sentence was "justified" in light of "the serious nature of the crimes committed by the defendant." J.A. 75. The court also weighed the "need for the sentence to reflect the seriousness of the offense," concluding that the sentence "provid[ed] a fair and just punishment for the defendant." J.A. 75, 76. The court also considered the need "to

provide an adequate deterrence to others," as well as "the need to protect the public from further crimes of the defendant." J.A. 75, 76.

The record also indicates that the district court evaluated, if only briefly, "the history and characteristics of the defendant." J.A. 75. In particular, the court considered whether the sentence was appropriate in light of "the defendant's extensive criminal history and in conjunction with his reported history of substance abuse," as well as Simmons' "need for substance abuse treatment." J.A. 75. Ultimately, the sentencing court concluded that its chosen sentence would "afford the defendant the appropriate and necessary means of rehabilitation and the five years of supervised release will offer the defendant time to readjust his life." J.A. 77.

Although, at times, the district court's consideration of these issues is perfunctory, the record demonstrates, at the very least, that the court evaluated these factors in determining the appropriate sentence. As to Simmons' crack/powder disparity argument, however, *nothing* in the sentencing transcript indicates that the district judge considered the issue, much less explained the basis for rejecting that argument. Indeed, the record is *entirely silent* on the issue.

Only the following generalized and conclusory statement even *arguably* comes close to addressing the issue:

> Finally, the Court has considered the advisory Sentencing Guidelines and the need to avoid unwarranted sentencing disparities. The defendant's sentencing range is 110-137 months imprisonment. The Court has considered this advisory range in determining the appropriate sentence, and the sentence is within that range. Therefore, it is unlikely to result in unwarranted disparities.

J.A. 76. The majority relies heavily on this statement to conclude that, even though the district court did not *expressly* articulate its rationale for rejecting Simmons' particular argument, it can be inferred that the district court ruled on Simmons' argument by implication. On careful reading, however, this passage indicates precisely the opposite.

Contrary to the majority's dubious suggestion, this vague passage suggests not that the court considered Simmons' crack/powder disparity argument, but rather that the district court considered only whether Simmons' sentence would result in an unwarranted disparity when compared to sentences imposed in other crack cases. According to the sentencing court, Simmons' sentence "is unlikely to result in unwarranted disparities" merely because it "is within [the advisory Guidelines] range." The fundamental premise of Simmons' argument, however, was that the sentencing range itself was unfair when compared to the range that would have been recommended had his offense involved powder as opposed to crack cocaine. Therefore, if the district court actually had considered Simmons' argument, as the majority claims, the court would have compared the difference between crack and powder sentencing *ranges* (plural). Instead, as this passage makes clear, the court considered only "*this* advisory range in determining the appropriate sentence."[15] J.A. 76 (emphasis added).

The most plausible reading of this passage suggests that the district court improperly limited its consideration of the appropriate sentence to the advisory Guidelines range, and thus never considered Simmons' argument that a sentence below that range was more appropriate and more just. The majority's quip in reference to defense counsel's objection is more appropriate here: although the court used the words "unwarranted" and "disparities," nothing in this passage even remotely indicates that the court considered Simmons' distinct crack/powder disparity argument. To the contrary, this statement "strongly suggests," to borrow another line from the majority, that the district court misunderstood or effectively ignored Simmons' argument that there is an unfair disparity between the recommended sentencing ranges for offenses involving crack cocaine and those involving powder cocaine.[16]

---

[15]The district court's conclusion that no unwarranted disparities would result simply because the sentence it chose to hand down was within the advisory Guidelines range also improperly presumes that the range recommended under the Guidelines was inherently fair. That improper assumption, standing alone, is sufficient to support remand. *See Cruz*, 461 F.3d at 754.

[16]The very fact that we are forced to engage in this type of review is precisely why this Court should require district court judges to explicitly respond to all nonfrivolous arguments rather than speculating as to whether a district court considered and ruled on an issue by implication.

In any event, even if we could infer from the district court's vague statement regarding "unwarranted disparities" that the sentencing judge considered Simmons' argument, there can be no dispute that the sentencing judge plainly failed to explain why he rejected that argument as a basis for imposing a sentence lower than the Guidelines range. The district court provided absolutely no rationale for its conclusion, rejecting the notion of unwarranted disparities out of hand without any substantive explanation. As this Court previously has concluded, such generalized and conclusory statements are insufficient to demonstrate that the district court conducted the requisite individualized consideration of the factors set forth in 18 U.S.C. § 3553(a). *See Penson*, 526 F.3d at 338 (vacating sentence as unreasonable because "[t]he district court's statement was inadequate to explain why it considered a sentence within the Guidelines range appropriate"); *Thomas*, 498 F.3d at 340-41 (vacating sentence as procedurally unreasonable where defendant raised a variety of § 3553(a) factors, "but those arguments went unmentioned and unaddressed, save the general statement by the district court that it had received, read, and understood the sentencing memorandum"). Absent a more substantive consideration of Simmons' particular argument, this Court cannot be certain, as it must be under *Rita*, that the district court complied with its obligation under § 3553(a) to evaluate whether Simmons' argument provides a valid basis for a downward departure.

Contrary to the conclusion reached by the majority, these facts demonstrate that the district court committed significant procedural errors that rendered Simmons' sentence unreasonable, even under plain-error review.

**E.**

Contrary to the majority's suggestion, we cannot simply overlook the district court's utter failure to address Simmons' primary argument in favor of a downward variance, even if, according to the majority, Simmons' argument "involved a legal, not factual, matter." Maj. Op. at 17. Despite the majority's effort to manufacture a new exception to our procedural reasonableness inquiry, this Court has never held that a district court can simply ignore its statutory obligations under § 3553(a) to consider a

defendant's nonfrivolous arguments merely because they involve purely legal questions. Not only is the majority's willingness to give the district court the "benefit of the doubt," Maj. Op. at 22 (quoting *Vonner*, 516 F.3d at 392), and to explain away the district court's error by making unsubstantiated inferences about what the court *may* have been thinking contrary to controlling precedent, it also reveals a fundamental and deeply troubling imbalance that is inherent in the approach endorsed in *Vonner*.

## VI.

Although the district court stated that it considered all of the arguments raised in Simmons' sentencing memorandum, there is no indication in the record that the court in fact considered Simmons' particular crack/powder disparity argument, despite the fact that it was Simmons' central argument in both his sentencing memorandum and at the sentencing hearing. Absent some explanation of the district court's basis for rejecting that argument, the sentencing record does not permit meaningful review of the reasonableness of Simmons' sentence.

I therefore respectfully dissent.